NEW JERSEY DEPARTMENT OF LABOR,
WORKMEN'S COMPENSATION BUREAU.

ARTHUR H. FENNIMORE, PETITIONER, v. UNION CON-
STRUCTION AND HOLDING CO., RESPONDENT.

Decided December 10, 1943.

A petition was filed in this matter by Arthur H. Fennimore seeking compensation for personal injury sustained on April 17th, 1943, when a car he was driving was struck by a locomotive of the Lehigh Valley Railroad while he was transversing a private road laid from the premises of the respondent to the public highway after the termination of his day's work.

That petitioner sustained his injury, as claimed, is undisputed, as well as the fact that he sustained some percentage of partial permanent disability as the result thereof. The chief contention between the parties is whether the injury in question arose out of and in the course of the employment. *R. S.* 34:15–7; *N. J. S. A.* 34:15–7.

This cause came on for a hearing before me at Somerville, New Jersey, November 19th, 1943, at which time counsel for both sides stated that since there was no dispute about material facts of the case that all of the facts would be stipulated, leaving to the court the legal inferences to be drawn therefrom.

Accordingly the following stipulation of facts was read into the record:.

"Respondent conducted its business on a large tract of land lying in Bridgewater Township, Somerset County, New Jersey. Its property is surrounded at 'least to the north, east and west by lands presently owned by Calco Chemical Company of Bound Brook, New Jersey. The lands of Calco Chemical Company extend to the north of this property a distance of approximately 1,500 feet to a public highway known as Bound Brook Road. The only means of ingress and egress to the property of the Union Construction and Holding Co. is by means of a dirt road approximately 10 feet wide which runs from the public highway, Bound Brook Road, northerly through the lands presently owned by Calco Chemical to the main gate of Union Construction. This road is a private road and constitutes the one and only means by which persons employed by Union Construction can reach their place of employment. The Union Construction therefore has a right of way, by necessity, over the lands north of its property to the Bound Brook Road or nearest public highway.

"This private road or way of necessity was intersected by the main lines of three railroad companies. At the northerly end of this road it was intersected at grade by four sets of tracks belonging to the Central Railroad of New Jersey. * * * Approaching the entrance to the property of Union Construction this road was intersected at grade by the main lines of the Reading Railroad and the Lehigh Valley Railroad.

"* * * On April 17th, 1943, petitioner, who was a pump operator for respondent, finished his work at about 11:15 P. M. when he was relieved at his post by another employee who was to take over the next shift. He got into his private car which was parked on the property of respondent and also picked up a co-employee, one George Pinfield, and started to leave the plant. The gate facing the private road was opened by a guard employed by respondent, and petitioner and his passenger proceeded north on the private road toward the public highway known as Bound Brook Road. As petitioner reached the west bound track of the Lehigh Valley

Railroad, a distance of approximately 180 feet from the gate, his car was struck by a west bound train of the Lehigh Valley Railroad and he suffered various personal injuries for which this petition is filed. His passenger, George Pinfield, was killed instantly."

There was also submitted in evidence by consent two longhand sketches (*Exhibits P-1* and *P-2*) which graphically depict the location of the private road with respect to respondent's property, the fence and gate by which its property is separated from the surrounding property and the proximity of the railroad crossing to the entrance of respondent's premises. Three photographs (*Exhibits P-3, 4* and *5*) were also submitted by consent and they corroborated the facts depicted in the sketches.

In view of the undisputed facts a determination of the compensability of this case resolves itself into a question of law. A number of cases from this and other jurisdictions was submitted for my consideration by counsel for petitioner but none of the New Jersey cases appear to be exactly in point. The case at bar, therefore, seems to be one of novel impression in this state.

The present case is clearly distinguishable from *Bryn* v. *Central Railroad Co.,* 114 *N. J. L.* 534; 177 *Atl. Rep.* 857; *affirmed (Court of Errors and Appeals),* 115 *N. J. L.* 508; 180 *Atl. Rep.* 874, in which the employee after leaving his employer's premises walked along a public street and then attempted a short cut over the tracks of the railroad in order to reach his home, a practice which he had apparently followed for many years even though there was another way over the public streets for him to reach his home. The employee in the Bryn case was, as our Court of Errors and Appeals took occasion to point out in the recent case of *Fury* v. *New York and Long Branch Railroad Co.,* 127 *N. J. L.* 354; 22 *Atl. Rep.* (2d) 286, in distinguishing that case (the Fury case) from the Bryn case.

"We have not overlooked our holding in the case of *Bryn* v. *Central Railroad Company of New Jersey,* 114 *N. J. L.* 534; 177 *Atl. Rep.* 857; *affirmed,* 115 *N. J. L.* 508; 180 *Atl. Rep.* 874. That case is clearly distinguishable on the

facts. In that case deceased employee 'chose a dangerous route' when there was a 'perfectly safe way by which he could have reached his home.' He was not where, under his contract of employment, he 'had the express or implied right to be.' He was a trespasser."

Obviously the employee in this case was not a trespasser on the railroad property in question, nor was he choosing the more dangerous of two or more ways to reach the public highway. He was pursuing the one and only road which led from his place of employment to the public road.

In the case of *McMillin* v. *Calco Chemical Co., Inc.*, 15 *N. J. Mis. R.* 68; 188 *Atl. Rep.* 694, the employee after finishing his day's work got into his car and drove along a road on the employer's premises which was intersected by a right of way of the Central Railroad Co. and at that point was run down by a train. In holding that the accident arose out of and in the course of the employment Chief Justice Brogan for the Supreme Court said:

"* * * In the brief of the prosecutor, passing mention is made that the accident did not occur on the premises of the employer, but on the tracks of the railroad company. There is no merit whatever to this argument. The roadway leading into the plant, laid out as it is over the lands of the employer, was built for the convenience and use of those coming to or leaving the plant. The railroad right of way is laid out across these privately owned lands.

"The employer owns the land on each side of the railroad right of way and employees parked automobiles on the land between the railroad tracks and the plant of the employer, or on the land between the railroad tracks and the public highway * * *."

The distinction made between the McMillin case and the present case is that the road which intersected the railroad's right of way was owned by the employer, whereas in the present case the road was on the property of another. This appears to me to be a distinction without a difference, since it is conceded that the employer in this case had a right of way by necessity over the road and for the purposes of ingress and egress it was as much a part of his property as if he owned it.

The case of *Fury* v. *New York and Long Branch Railroad Co.*, 126 *N. J. L.* 25; 16 *Atl. Rep.* (*2d*) 544; *affirmed* (*Court of Errors and Appeals*), 127 *N. J. L.* 354; 22 *Atl. Rep.* (*2d*) 286, seems to come closest to the situation at bar and would be controlling except that our Supreme Court found certain other factors beside the selection of a direct route over the property of another from the place of employment to the public road which indubitably placed the employee in the ambit of his employment at the time of the injury. However, the following excerpts from the opinion for the Supreme Court by Mr. Justice Heher would indicate pretty clearly that the case at bar is at least within the *dicta* of the opinion:

"* * * Prosecutor's regular working hours were from 8 A. M. to 5 P. M. On the day in question, at 5 P. M., or within a few minutes thereafter, he walked from the tower across the tracks of the Long Branch Company and thence across the track of the Central Company to the sub-station. He had reason to believe that the mechanism there required adjustment, and, finding that this was so, he labored for an hour on the generator and commutator. He then proceeded northeast between the rails of the Central Company's single track (the ground was covered with a foot of snow and ice, and the cleared track afforded the only pathway), intending to leave the right of way about 400 feet from the sub-station for his home nearby. Before he reached that point, he was struck by a train of the Central Company and sustained the disabling injuries for which compensation is sought. The mishap occurred approximately 320 feet from the signal tower, and not much more than 160 feet from the sub-station. He testified that this was the way customarily used by himself and other workmen upon leaving the junction at the close of the day's work. * * *

"* * * The employment had not ended when the accident happened. While prosecutor was then on his way home, he was yet within the inspection territory; and so he was still bound to exercise his powers of observation with a view to the detection of faults in the signal system and switching mechanism, and all obstacles to their normal functioning, as

well as to discover any other menace to safety of operation along the right of way, and to take timely remedial measures. A failure in this respect would plainly be classable as a breach of duty. He had not departed from his employment while he remained within the ambit of service. He was not then 'on his own,' as in *Gullo* v. *American Lead Pencil Co.*, 119 *N. J. L.* 484; 196 *Atl. Rep.* 438. Compare, also, *Terlecki* v. *Strauss*, 85 *N. J. L.* 454; 89 *Atl. Rep.* 1023; *affirmed*, 86 *N. J. L.* 708; 92 *Atl. Rep.* 1087; *Bolos* v. *Trenton Fire Clay, &c., Co.*, 102 *N. J. L.* 479; 133 *Atl. Rep.* 764; *Lehigh Navigation Coal Co.* v. *McConnell*, 120 *N. J. L.* 428; 199 *Atl. Rep.* 906; *affirmed*, 121 *N. J. L.* 583; 3 *Atl. Rep.* (2d) 581.

"In the circumstances, there was indubitably a causal connection between the injury and the employment. The relationship was such as to warrant classification of the risk as reasonably incident to the employment. The hazard was a natural consequence of what the employee was obliged to do in the fulfillment of his contract of service. It is pertinent to note here that it suffices if the employment was substantially contributory to the injury. *Vide Cudahy Packing Co.* v. *Parramore*, 263 *U. S.* 418; 44 *S. Ct.* 153; 68 *L. Ed.* 366; 30 *A. L. R.* 532; *In re Madden's Case*, 222 *Mass.* 487; 111 *N. E. Rep.* 379; *L. R. A.* 1916D 1000.

"And it is also to be observed, without necessarily implying that that in itself would be determinative in the same direction, that the sole alternative course open to prosecutor, after he had departed from the sub-station, was over the right of way of his employer—a double track railroad with a much greater volume of traffic and a correlative increase of risk. The course he took was the most direct way home, and clearly it was the least dangerous. Indeed, there was no other available route until he reached the bypath some 100 feet beyond the place of the mishap, unless he pursued the roundabout and more hazardous course over the railroad of his employer. Compare, in this connection, *Cudahy Packing Co.* v. *Parramore, supra; Bountiful Brick Co.* v. *Giles*, 276 *U. S.* 154; 48 *S. Ct.* 221; 72 *L. Ed.* 507; 66 *A. L. R.* 1402."

However, regardless of the distinction that may be made

between this case and the McMillin and Fury cases, it seems to me that the law of this case is to be found in the decisions of the Supreme Court of the United States in the cases of *Cudahy Packing Company of Nebraska* v. *Mary Ann Parramore,* 263 *U. S.* 418; 44 *S. Ct.* 153, and *Bountiful Brick Co.* v. *Giles, supra.* In connection with these cases it is to be noted that they are cited not only in the Fury case, *supra,* but in the following decisions of our Supreme Court and Court of Errors and Appeals: *Bryn* v. *Central Railroad Co., supra* (rule quoted but facts distinguished) ; *Grady* v. *Nevin Press Co.,* 120 *N. J. L.* 351; 199 *Atl. Rep.* 578 (cases cited and facts in Parramore distinguished from those in Grady).

In *Cudahy* v. *Parramore, supra,* it appeared that the company operated a meat packing plant about six miles north of Salt Lake City. In going to and from the plant workmen proceeded along a main highway running north and south that passed the plant at a distance of about one-half mile east. From this point a public road ran west to a point beyond the plant and was crossed by three lines of railroad, one of which was immediately adjacent to the Cudahy plant. The only practical way of ingress and egress for employees was along this road and across the tracks. Parramore, while on his way to work in an automobile, was struck by a train of the railroad company adjacent to the plant. In the opinion for the court Mr. Justice Sutherland said:

"Whether a given accident is so related or incident to the business must depend upon its own particular circumstances. No exact formula can be laid down which will automatically solve every case. The fact that the accident happens upon a public road or at a railroad crossing, and that the danger is one to which the general public is likewise exposed, is not conclusive against the existence of such causal relationship, if the danger be one to which the employee, by reason of and in connection with his employment, is subjected peculiarly or to an abnormal degree. * * *

"Here the location of the plant was at a place so situated as to make the customary and only practicable way of immediate ingress and egress one of hazard. Parramore could not, at the point of the accident, select his way. He had no other

choice than to go over the railway tracks in order to get to his work; and he was in effect invited by his employer to do so. And this he was obliged to do regularly and continuously as a necessary concomitant of his employment, resulting in a degree of exposure to the common risk beyond that to which the general public was subjected. The railroad over which the way extended was not only immediately adjacent to the plant, but, by means of switches, was connected with it, and in principle it was as though upon the actual premises of the employer.

"We attach no importance to the fact that the accident happened a few minutes before the time Parramore was to begin work, and was, therefore, to that extent, outside the specified hours of employment. The employment contemplated his entry upon and departure from the premises as much as it is contemplated his working there, and must include a reasonable interval of time for that purpose. * * *"

The facts in the case at bar are, if anything, stronger than those in Cudahy Packing Co. v. Parramore, because the road on which the employee was traveling here was a private road, leading to the employer's premises only, and the risk of mishap in crossing these railroads was peculiar to employees of respondent only, whereas the risk in the Parramore case was to some degree a risk shared by the public in general, because the accident occurred on a public road. Furthermore, the risk in this case was enhanced by the fact that it was a private road and the railroad crossings were unprotected, whereas a public road would be protected by at least a warning signal. The risk entailed in the daily crossing of these unprotected railroad rights of way by employees of respondent was a risk, which to my mind was clearly an incident of the employment and one that was also foreseeable. The location of respondent's premises made not only the customary, but the only way of ingress and egress one fraught with the very danger that overtook the present petitioner on the day in question. An employer is liable for injuries or death caused by accidents arising from or growing out of risks peculiar to the nature of the work within the scope of the employment or incidental

thereto and accidents to which employees are exposed in a special degree because of employment. *Belyus* v. *Wilkinson, Gaddis & Co.,* 115 *N. J. L.* 43; 178 *Atl. Rep.* 181; *affirmed,* 116 *N. J. L.* 92; 182 *Atl. Rep.* 873; *Hall* v. *Doremus,* 114 *N. J. L.* 47; 175 *Atl. Rep.* 369.

I do find, therefore, that the petitioner in this case suffered a personal injury by accident arising out of and in the course of his employment within the meaning of our Workmen's Compensation Act, of which respondent had due and timely knowledge, and that on the basis of the medical evidence presented by Drs. Julian P. Linke and M. Weinstock Bergman for petitioner, and Drs. Otis P. Chapman and Jack Blumberg for respondent, that petitioner is entitled to payment of all medical and hospital expenses together with one week for temporary disability and 20% of total for partial permanent disability at the rate of $20 per week.

Dr. Julian P. Linke for petitioner estimated petitioner's disability at 12% to 15% of total, orthopedically, and Dr. M. Weinstock Bergman estimated neurological disability at 12½% of total for an alleged concussion. Dr. Chapman, for respondent, estimated the orthopedic disability at 10% of total and Dr. Jack Blumberg estimated the neurological disability at 5% of total for the alleged concussion.

It is, therefore, \* \* \* ordered, that the petitioner be paid compensation.

\*      \*      \*      \*      \*      \*      \*

HARRY S. MEDINETS,
*Deputy Commissioner.*