**B. Orita HUNT, Widow, and Paul C. Hunt, Minor, Dependents of Kenneth M. Hunt, Deceased, Employee, Appellants,**

v.

**ALLIS–CHALMERS MANUFACTURING COMPANY, Employer, and Aetna Casualty & Surety Company, Insurer, Respondents.**

No. 25185.

Kansas City Court of Appeals.

Missouri.

June 2, 1969.

Edgar S. Carroll, Kansas City, Popham, Popham, Conway, Sweeny & Fremont, Kansas City, of counsel, for appellants.

R. Robert Cohn, James F. Stigall, Kansas City, Morrison, Cohn & Stigall, Kansas City, of counsel, for respondents.

SHANGLER, Judge.

Appellants, B. Orita Hunt, widow, and Paul C. Hunt, minor son, as dependents of the deceased employee, Kenneth M. Hunt, made claim for benefits under the Missouri Workmen's Compensation Law in consequence of the death of Mr. Hunt. By a

split decision, the Industrial Commission affirmed the award of the referee allowing claimants maximum death benefits. The circuit court reversed the award and entered judgment in favor of the respondents, Allis-Chalmers Manufacturing Company, employer, and Aetna Casualty and Surety Company, insurer. On the date this appeal was taken, total benefits in the amount of $8,520.50 had accrued under the award. Such is the amount in controversy. It is less than $15,000.00, thus jurisdiction of the appeal is properly in this court.

At the outset, we express our indebtedness to counsel for the quality of their briefs and for the mannerliness of their oral presentations.

Counsel concede that the basic facts are not in dispute. The sole contested issue was whether on February 16, 1966, employee Kenneth M. Hunt sustained an accident arising out of and in the course of his employment, resulting in his death. The Industrial Commission explicitly found that he had. The circuit court, in reversing, implicitly found that he had not. The basis for reversal was "(t)here is not sufficient competent evidence in the record to warrant said Industrial Commission in making said award in favor of the plaintiffs". Section 287.490(1), V.A.M.S., 1959. Where, as in this case, the facts are not controverted, whether the employee's death arose out of and in the course of his employment becomes a question of law. As such, the Industrial Commission's determination is not binding on the reviewing court. Corp v. Joplin Cement Company, Mo.Sup., 337 S.W.2d 252, at page 258; Lawson v. Lawson, Mo.App., 415 S.W.2d 313, at page 316.

The Allis-Chalmers facilities were located at 627 South Cottage Street in Independence, Missouri, and lay, generally, easterly and westerly.[1] The plant abutted Cot-

---

1. As an aid to orientation we have reproduced, to the extent possible, claimant's Exhibit A–I, which was received in evidence at the compensation hearing before the referee. The exhibit is a plat drawn by Crowley, Wade, Milstead, Incorporated, Engineers and Architects, and bears the certification of R. B. Wade, Jr., Registered Land Surveyor.

Exhibit A—I

tage Street to the west and Pleasant Street to the east. A Missouri Pacific Railroad right-of-way ran along the south edge of the plant for a distance of 345.2 feet east from Cottage Street. The width of the right-of-way was 100 feet, extending fifty feet north and south from the center of the main track. From this track, a spur extended northerly and eastward into the dock facilities inside the plant area. A chain link fence, intersticed by fourteen gates, completely enclosed the employer's factory. That portion of the fence fastened in concrete and located to the west and north of the spur encroached upon the right-of-way, but to what extent does not appear. Immediately to the south of the right-of-way was located the Independence Stove and Manufacturing Company. It owned some ground contiguous to the east and south which was connected to Cottage Street to the west by a 200 feet alley owned by the city. This area had initially been used by the Stove Company as a dumping ground but was later graded as a parking facility for its employees and had been so used for the past twelve years. A vestige of its former use remained at the date of trial in the form of a sign located on that property which declared: "Private Dump— No Trespassing". The parking area was able to accommodate about 70 cars but only about 10 spaces were habitually pre-empted for the Stove Company's own employees. A cordon of railroad ties was arranged by the Stove Company in order to ensure ample parking space for its own purposes. The remaining area was available for employees of plants in the vicinity and had been so used by Allis-Chalmers employees for many years prior to February 16, 1966. Mr. Elvin K. Luff, an officer of the Stove Company, acknowledged that Allis-Chalmers personnel had parked there "for a good many years", which practice was known to his company and was neither objected to nor resisted. No formal arrangement or understanding had been concluded between the Stove Company and Allis-Chalmers respecting the use of the lot for parking by the latter's employees. Neither

was there any substantial evidence that Allis-Chalmers had ever undertaken to maintain or improve it. However, on those occasions when the irregular parking of their vehicles by Allis-Chalmers employees impeded the use of the lot by the Stove Company's employees, a foreman of the latter would lodge a complaint with Mr. A. C. Scott, Manager of Employee and Community Relations for Allis-Chalmers, with the expectation that the abuse would thereby be corrected. Mr. Scott, in turn, brought such plaints to the attention of the employees by bulletins, both reproving and solicitous in tone, which were posted throughout the plant. The first of these (Claimant's Exhibit AD), issued on September 10, 1963, stated:

"NO PARKING

Allis-Chalmers employees, particularly third shift employes, are parking on Independence Stove Foundry property north of the Enamel Plant and the railroad tracks.

The Stove Foundry has been kind enough to let our employes use the entire area east of their plant. This small space north of their plant between the railroad tracks must not be used by Allis-Chalmers employes.

It would be unfortunate to lose the nice parking area now afforded us because of failure to heed this 'No Parking' warning.

(s) A. C. Scott

A. C. Scott
Personnel Manager"

Thereafter, others, similar in content and temper, were issued on March 13, 1964, April 7, 1965 and February 3, 1966. On July 25, 1966, the employees were notified that, as the alleyway which gave access to the lot from Cottage Street was being paved, no parking would be available there for them.

Mr. Scott, himself, admitted to personal knowledge of the continuous use the employees were making of the Stove Company lot since at least September 10, 1963, some two years and five months prior to the event which is our concern. Although he never suggested its use, neither had he ever instructed any of the Allis-Chalmers employees not to use that lot. On May 27, 1964, Mr. Scott issued a bulletin wherein it was suggested that second and third shift employees use a parking lot owned by a church and located at the northwest corner of River Boulevard and Pacific Street,[2] about a block and a half northwest of the plant. Another Missouri Pacific track was located approximately 1½ blocks north of the Allis-Chalmers facility along Pacific Street and that particular track extended westerly so that it bordered the southern edge of the church parking area.[3] Allis-Chalmers had arranged with the church for such use in consideration for which it agreed to maintain it and pay some of the cost for lighting it. The only other alternative open to the employees was to park on the street. They preferred not to use the church lot because articles had been frequently stolen from the automobiles parked there and street parking was an undesirable alternative because of the risk of being ticketed for various reasons. In any event, whether parked at the church lot or Stove Company area (and for that matter, from what we can gather from the exhibits, even if parked upon the streets) an employee was required to cross one set or another of Missouri Pacific Railroad tracks in order to gain access to the plant.

The Stove Company parking area was within a defilade. In order to get to work from it, Allis-Chalmers employees using the lot emerged from its northern edge and walking northwesterly, first over an improvised bridge of railroad ties, and then upon the south side of the right-of-way embankment. From thence, they crossed the series of tracks northward toward either the south gate which was the more proximate but rarely open, or the west gate, some unspecified distance to the west. A well defined path, much of it discernible in the photographic exhibits, had been worn along this route from the lot to the employer's physical plant. It had been a common occurrence for these employees parked there to use that path in going to and coming from work. During changes in shifts, a flow of foot traffic over the series of tracks from the plant to the lot, In both directions, was fully evident. Mr. Scott had himself seen employees cross the tracks in the manner described without attempting to inhibit or discourage such movement. A longer, more circuitous and less convenient route from that lot to the plant was available. It entailed walking westward from the lot through the alleyway to Cottage Street, thence north along Cottage Street up to its intersection by the Missouri Pacific Railroad tracks, across the tracks then east to the factory gate. That railroad crossing was protected by an automatic arm, bell and light device.

Kenneth M. Hunt, claimants' decedent, had been an Allis-Chalmers salaried hourly employee for three years prior to his death. As such, his contract of employment did not include any provision or allowance for transportation to and from work. His pay period did not commence until he had timed in at the department to which he was currently assigned. For some time prior to February 16, 1966, Mr. Hunt had used the Stove Company parking lot. A fellow employee, Donald V. Ham, saw decedent park his car in that lot about four of the five days each week. In fact, they often parked side by side and on occasion walked together across the tracks to work along the path previously described. On the day of the occurrence, the deceased was working

---

**2, 3.** Although the locations of the church parking lot and the Missouri Pacific Railroad tracks bordering its southern edge were properly represented upon claimant's Exhibit A–I, it was beyond the capacity of our facilities to include them in the drastically reduced dimensional drawing to which we refer.

the 3:30 P.M. to midnight shift. He left home about 2:30 P.M. in his 1965 red Volkswagen. Another fellow employee, Jack E. Harmon, who was working the same shift had arrived at the lot about 3:15 P.M. and noticed deceased's car already parked. Mr. Harmon, it should be noted, had himself been crossing from the lot to work for the past three years. On that day, February 16, 1966, Mr. James B. Sullivan, another employee, was unloading steel upon the dock at the south side of the plant. He sensed something was amiss when a passing train commenced stopping. He was told that a man had been struck and went upon the tracks. He saw Mr. Hunt, who was still alive, located within that crotch formed by the juncture of the main track with the spur which ran into the plant. It was then about 3:10 P.M. Officer Robert Johnson of the Independence, Missouri Police Department made the investigation. The substance of Officer Johnson's testimony, including that information derived by him from the engineer of the train, was that Mr. Hunt had been walking in a northwesterly direction across the tracks, had been struck at a point about 285 feet east of Cottage Street, was dragged westerly 38 feet west to a point close to the juncture of the Missouri Pacific main line and the spur. It was at this point, apparently, where he was found by Mr. Sullivan as previously described. Upon these facts we must decide the legal issue presented.

■ Subject to certain exceptions, generally, "harm sustained by an employee while going to or from his work is not compensable". 71 C.J., page 712, 99 C.J.S. Workmen's Compensation § 232. Hazards thus encountered are not ordinarily regarded as incidents to the employment because the employee is not then engaged in a service for his employer benefitting him. Such hazards are not deemed as arising out of and in the course of employment.

Downs v. Durbin Corporation, Mo.App., 416 S.W.2d 242, at page 246; Donzelot v. Park Drug Co., Mo.App., 239 S.W.2d 526; Hawley v. Eddy Brothers, Inc., Mo. App., 371 S.W.2d 338. Claimants rely for their recovery upon a widely held exception to the rule above stated which involves an implied extension of the physical premises of the employer to include "a way over the employer's premises, or over those of another in such proximity and relation as to be in practical effect a part of the employer's premises * * *". Bountiful Brick Co. v. Giles, infra, note 5, at page 222. An exposition of that rule is fully developed in I Larson's Compensation Law, Section 15.13, at page 199 et seq.:

"The commonest ground of extension is that the off-premises point at which the injury occurred lies on the only route, or at least on the normal route, which employees must traverse to reach the plant, and that therefore the special hazards of that route become the hazards of the employment.

"This general idea seems to have been accepted by the majority of jurisdictions in some degree. Two Supreme Court cases, the *Parramore*[4] case and the *Giles*[5] case, have lent prestige to this view. * * *"

Continuing at page 202:

"Note that the exception to the premises rule here involved contains two components. The first is *the presence of a special hazard at the particular off-premises point.* The second is *the close association of the access route with the premises,* so far as going and coming are concerned. (Emphasis supplied.)

Respondents, on the other hand, while not rejecting the rationale of Parramore, supra, note 4, and Giles, supra, note 5, contend they have no applicability to the facts but that, rather, Tucker v. Daniel

---

4. Cudahy Packing Co. of Nebraska v. Parramore, 263 U.S. 418, 44 S.Ct. 153, 68 L.Ed. 366, 30 A.L.R. 532 (1923).

5. Bountiful Brick Co. v. Giles, 276 U.S. 154, 48 S.Ct. 221, 72 L.Ed. 507, 66 A.L.R. 1402 (1928).

Hamm Drayage Co., Mo.App., 171 S.W.2d 781, should govern on the facts. They further suggest as a basis for rejection of the exception relied upon by claimants that "Missouri Courts are uniformly reluctant to extend the premises to public streets, alleys and right of ways". On the contrary, we believe that the augury of such well-reasoned decisions as Murphy v. Wells-Lamont-Smith Corp., Mo.App., 155 S.W.2d 284; Kunce v. Junge Baking Company, Mo. App., 432 S.W.2d 602 and even Tucker v. Daniel Hamm Drayage Co., supra, cited by appellants, points to the application of the exception extending the off-premises rule in an appropriate factual situation. In each of them either Parramore or Giles, or both, were cited with approval. They have, as well, been referred to in other Missouri decisions, but have not loomed in the determination of an issue factually comparable to that confronting us. We have no Missouri precedent to guide us as to how and when the extension of the off-premises rule should be applied in circumstances when an employee is injured or killed crossing railroad tracks while on his way to work or returning from it. A complete collection of cases treating the subject is found in 50 A.L.R.2d 363. Among the better reasoned cases recognizing and applying the extension, in addition to Parramore and Giles are Fennimore v. Union Construction & Holding Co., 22 N.J.Misc. 33, 35 A.2d 32; Spellman v. Industrial Commission of Ohio, 73 Ohio App. 369, 51 N.E.2d 414 and Judson Mfg. Co. v. Industrial Accident Comm., 181 Cal. 300, 184 P. 1.

In Parramore, the employee was struck and killed by a train while on the way to work along the only practicable way of ingress and egress, a road which crossed some railroad tracks and which was customarily used by the employee. While crossing them he was struck and killed. The tracks adjoined the employer's plant and were physically connected with the factory by a spur track. The accident occurred about seven minutes before he was to have commenced working. The basic factual distinction between that case and ours is

that Mr. Hunt had an alternative route open to him, whereas Mr. Parramore did not. Despite that difference, the holding of the United States Supreme Court is instructive and relevant to our determination. 263 U.S. at page 426, 44 S.Ct. at page 155, we find:

" * * * (H)e was in effect invited by his employer (to go over the railway tracks) * * *. And this he was obliged to do regularly and continuously as a necessary concomitant of his employment, *resulting in a degree of exposure to the common risk beyond that to which the general public was subjected.* The railroad over which the way extended was not only immediately adjacent to the plant, but, by means of switches, was connected with it, and *in principle it was as though upon the actual premises of the employer.*" (Emphasis added.)

The court went on to conclude that as the employment contemplated the entry and departure from the premises by the employee, a reasonable time must be included for that purpose, and, therefore, the fact that accident occurred a few minutes before he was to commence working, was not significant. It was of no moment, therefore, that Hunt was struck some twenty minutes before his work actually was to have begun. Ott v. Consolidated Underwriters, Mo.App., 311 S.W.2d 52, at page 56; Gardner v. Stout, 342 Mo. 1206, 119 S.W.2d 790, at page 793.

The factual situation in the Giles case bears striking similarities to our own. Mr. Giles was struck and killed while crossing railroad tracks on his way to work. The tracks adjoined the brickyard where he worked and were connected to it by a spur track. It was impossible for him and the other employees to avoid crossing the tracks when going to and coming from work. A public road crossed the tracks 200 yards south of the plant entrance. Sometimes the employees would cross the tracks on that road and other times they would come onto the railroad right-of-way through a fence

more nearly in line with the plant entrance and cross the tracks there. While following this latter route, the more convenient and less circuitous of the two, Giles was struck by a train and killed. The company manager knew Giles had previously used that particular route, had cautioned him to be careful, but had not instructed him to discontinue that method of crossing. The conclusions of the United States Supreme Court in affirming the judgment for compensation are particularly apposite to our own determination. 276 U.S. at pages 158–159, 48 S.Ct at page 222 the court stated:

" * * * If the employee be injured while passing, with the express or implied consent of the employer, to or from his work by a way over the employer's premises, or over those of another in such proximity and relation as to be in practical effect a part of the employer's premises, the injury is one arising out of and in the course of the employment as much as though it had happened while the employee was engaged in his work at the place of its performance. In other words, the employment may begin in point of time before the work is entered upon and in point of space before the place where the work is to be done is reached. Probably, as a general rule, employment may be said to begin when the employee reaches the entrance to the employer's premises where the work is to be done; but it is clear that in some cases the rule extends to include adjacent premises used by the employee as a means of ingress and egress with the express or implied consent of the employer. (Citing cases)

" * * * Since the only way of access to its brickyard from the east was across the railway tracks, the company necessarily contemplated the crossing of them by its employees. No definite line of travel being indicated by the company or followed by the employees, who, with the company's full knowledge and acquiescence, habitually crossed wherever they saw fit, it results that, however the crossing was made, the risk thereby incurred was reasonably incidental to the employment and became annexed as an implied term thereof. * * *"

See, also: Procaccino v. E. Horton & Sons, 95 Conn. 408, 111 A. 594; Reed v. Brown, 129 Ind.App. 75, 152 N.E.2d 257.

Thus, whether Mr. Hunt had chosen to use the church parking lot or the one he actually used, he was still required to cross railroad tracks adjacent to and in some proximity to the employer's premises and expose himself, recurrently, to its hazard. As in Giles, a more circuitous and less convenient alternate route across the tracks was available. Also, as in Giles, Hunt's employer, through its manager Scott, had knowledge of the practice of crossing the tracks at the two locations. Neither Hunt nor other employees were forbidden either to use the Stove Company parking lot, or to cross the right-of-way and tracks from that lot to and from work, although both practices had been known to the employer for several years. In fact, the very customary route used by the employees from that lot to the plant had also been known to the employer. Rather, it is evident by the publication of the several bulletins that the employer was solicitous of ensuring the continued availability of the Stove Company lot for its employees.

 Mr. Hunt, at the time he met his death, was within the customary route used by him and other employees in crossing the track. There can be no compensation for his death, however, unless it was by accident "arising out of and in the course of employment". Section 287.120(1), V.A.M.S., 1959. " * * * an injury arises *'out of'* the employment when there is a causal connection between the conditions under which the work is required to be performed and the resulting injury; and * * * an injury to an employee arises *'in the course of'* his employment when it occurs within the period of his employment, at a place where he may reasonably be, and while he is reasonably fulfilling the duties of his employment or engaged in doing something

incidental thereto." Wahlig v. Krenning-Schlapp Grocer Co., 325 Mo. 677, 29 S.W. 2d 128, at page 130; Tabor v. Midland Flour Milling Co., 237 Mo.App. 392, 168 S.W.2d 458. It is evident, from what we have already said, that Hunt's injury and death arose in the course of his employment, as he was en route to work—which was an activity incidental to his work—and along a path acquiesced in by his employer for such use and within that reasonable interval permissible between the arrival upon the employer's premises (the right-of-way impliedly appropriated by employer as a route of access for his employees) and the commencement of the actual work. Respondents, however, contend that Hunt's injury and death did not arise out of the employment as the hazard of being struck by the train upon the tracks was not one incidental to the employment because his "risk of exposure was no greater than that shared by the general public". In those cases dealing with injuries suffered while crossing tracks in going to or coming from the place of employment, under the circumstances we have described, thereby subjecting such employee to a peculiar risk, "there is such an obvious causal relation between the work and the hazard that the course of employment concept must be expanded to cover such employees, otherwise an injustice in the denial of compensation for an injury caused by the employment would result * * * it recognizes that the employment involves peculiar and abnormal exposure to a common peril which annexes itself as a risk incident to and inseparable from the employment". Jaynes v. Potlatch Forests, 75 Idaho 297, 271 P.2d 1016, at page 1018, 50 A.L.R.2d 356; Johannsen v. Acton Construction Co., 264 Minn. 540, 119 N.W.2d 826; Reed v. Brown, supra. See, also, I Larson's Workmen's Compensation Law, page 195 et seq. (Missouri decisions have allowed compensation when the circumstances of employment were such as to have subjected the employee to an "unusual risk". Read and compare, Lunn v. Columbian Steel Tank Co., 364 Mo. 1241, 275 S.W.2d 298 and Ries

v. De Bord Plumbing Co., Mo.App., 186 S.W.2d 488.) The most obvious hazard to which Mr. Hunt was exposed in going to and leaving the working premises was that of being struck down by a train—the very hazard which the tracks themselves foreboded. His resulting death was causally connected with the conditions of employment by the proximity of the tracks (some hundred feet, more or less) to the employer's physical premises and the necessity of crossing such intervening tracks in order to gain access to such premises. Mr. Hunt's recurrent, almost daily, exposure to the danger of the tracks at that point were in fulfillment of his obligation to get to the employer's premises in order to perform his work duties. As such, his status was different from members of the public and "involve(d) peculiar and abnormal exposure to a common peril". The evidence established "a causal connection between the conditions under which the work is required to be performed and the resulting injury" and we therefore conclude that the death arose "out of" the employment and is therefore compensable. We stress, however, that "(t)he extended course of employment based upon a special hazard in the access route is valid *only for that hazard*". I Larson's Workmen's Compensation Law, page 203. "(T)he protection will (not) continue when he has entered the avenues of travel where he is exposed to no work-connected hazard or any hazard greater than that to which all others not so employed are exposed." Johannsen v. Acton Construction Co., supra, 19 N.W.2d p. 831.

We observe that both the Parramore and Giles cases involved the construction of the Workmen's Compensation Act of Utah. That Act provided for compensation for injuries or death arising out of "or" in the course of employment rather than "and" in the course of employment as our statute provides. We cannot conceive that a different result would have been reached in those cases had the Utah law used the conjunctive wording rather than the disjunctive which was in fact used. Murphy v.

Wells-Lamont-Smith Corporation, supra, 155 S.W.2d at page 288; I Larson's Workmen's Compensation Law, p. 202.

 Respondents appear to argue that since Hunt was only a trespasser when crossing the tracks, he "acquired no * * right of access", and therefore his death did not result from a compensable accident. It is a curious argument because the employer, itself, was a trespasser by virtue of the substantial encroachment of its fence and concrete wall upon the railroad's right-of-way. In any event, "it cannot avail itself of the defense here because it consented to (the trespass)". Giles case, supra, 276 U.S. at page 159, 48 S.Ct. at page 222. Furthermore, whether one is a covered employee under the Act does not depend upon his technical status as trespasser, invitee, or any other. The determining factor is whether the hazard is encountered upon a way which, to all intents and purposes, has been appropriated by the employer as his premises. Jaynes v. Potlatch, supra, 271 P.2d p. 1019; Northwestern Fuel Co. v. Industrial Commission, 197 Wis. 48, 221 N.W. 396.

 Respondents next bring to our attention subsection 6 of Section 287.020, V. A.M.S.1959:

"Without otherwise affecting either the meaning or interpretation of the abridged clause, 'personal injuries arising out of and in the course of such employment', it is hereby declared not to cover workmen except while engaged in, or about the premises where their duties are being performed, or where their services require their presence as a part of such service."

This court has construed this subsection to be one of exclusion rather than inclusion. Hawley v. Eddy Brothers, Inc., supra, 371 S.W.2d at page 341. Respondents urge that, as at the time of injury Hunt "was neither on the employer's premises nor was he performing any service for the employer", the terms of the subsection exclude the possibility of allowing compensation.

We need only state that under the circumstances of this case, considering the use having been made of the adjacent railroad right-of-way as a route of access to the employer's premises, which practice was known to and acquiesced in by the employer, we view that portion of the railroad right-of-way as having been appropriated by the employer as his premises, and therefore the statutory exclusion does not apply.

Finally, respondents urge that the holding in Tucker v. Daniel Hamm Drayage Co., Mo.App., 171 S.W.2d 781, requires us to deny compensation to claimants. It is the only Missouri decision of which we are aware involving a claim for compensation by an employee who was injured by a train at a crossing while on the way to work. In that case, Tucker was engaged in loading and setting machinery at such places as might be designated by his employer. The site for the performance of the work was bounded by Main Street to the west, Levee Street to the east, Biddle Street to the south and Ashley Street to the north. Five or six tracks ran north and south along Main Street. A single track ran north and south on Levee Street and a spur from that track entered the work site building. On his way to work on the third morning, he was struck by a locomotive while crossing the public intersection at Main and Biddle Streets. In affirming the final award of the Industrial Commission denying compensation, the court approved of the holdings in the Parramore and Giles cases, but found that the circumstances of the case it was considering did not bring it within the rationale of those decisions and others of like import. It found (quoting from the Giles case) that the intersection where the injury occurred bore no " 'such proximity and relation' " to the employer's premises " 'as to be in practical effect a part of the employer's premises' ". (At page 785.) Neither was there any showing that the route taken by the employee was either required, necessary or customary or that the employer knew and approved of it. Whatever hazard was presented by the railroad crossing at the public

intersection was shared by the general public and could not be said to have been incident to Tucker's employment. All the elements found to be missing in that case, on the other hand, were abundantly proved in the case under our consideration. The two cases are readily distinguishable.

We conclude that Hunt's death was compensable. In so holding, we rely particularly on the rationale of the Giles case and others of like import. Under the particular facts of the case before us, we extend the off-premises rule to encompass the hazards of the railroad crossing which Hunt encountered while going to and returning from work as risks incident to the employment. The crossing was adjacent to the employer's premises, and when used as an access route by its employees, an extension of them. We acknowledge the availability of an alternate and perhaps safer route from the Stove Company parking lot to the plant. We are not to be understood as holding that the existence of such an alternate route may not, under the proper circumstances, be a factor to be considered in determining whether the accident arose out of and in the course of employment. Cf., for instance, General Steel Castings Corp. v. Industrial Commission, 388 Ill. 66, 57 N.E.2d 454. We do hold that the existence and use of the Stove Company parking lot was known to and acquiesced in by the employer for several years. Its very location at the south edge of the right-of-way directed the use to be made of the adjoining tracks as a convenient route of access to the employer's premises. The practice of crossing there was also of long standing, known by the employer for some time but was permitted to continue without remonstrance. Under such circumstances it would be harsh and unfair to deny the employee the intended benefit of his employer's sanction.

The judgment of the trial court is reversed with directions that it enter a judgment affirming the final award of the Industrial Commission.

All concur.