Wanda J. STORIE, Claimant–
Appellant,

v.

AMERICARE SYSTEMS, INC., d/b/a
Southbrook ·Skilled Nursing Center,
and Diamond Insurance Co., Employer–Respondent,

and

Treasurer of Missouri, as Custodian
of the Second Injury Fund,
Respondent.

No. SD 29635.

Missouri Court of Appeals,
Southern District,
Division Two.

Jan. 15, 2010.

Motion for Rehearing and Transfer
Denied Jan. 29, 2010.

Application for Transfer Denied
March 23, 2010.

Kenneth A. Seufert, Farmington, MO, for Appellant.

Juan F. Arias, Holtkamp, Liese, Schultz & Hilliker, P.C., St. Louis, MO, for Employer–Respondent.

GARY W. LYNCH, Presiding Judge.

Wanda Storie ("Claimant") appeals from the decision of the Labor and Industrial Relations Commission ("the Commission"), which denied her workers' compensation

benefits on the basis that her injuries from an automobile accident on her way home from work on June 12, 2003, did not arise out of and in the course of her employment. We affirm.

### Factual and Procedural Background

Americare System, Inc. ("Employer"), d/b/a Southbrook Skilled Nursing Center, employed Claimant as a licensed practical nurse. Claimant lived in Belleview, Missouri, which is approximately twenty-two miles from her place of employment in Farmington, Missouri.

Claimant typically worked four or five days in a row followed by two or three days off. Her normal shift started at 5:45 a.m. and ended around 2:15 p.m. According to Claimant, when she had to work the next day, she typically went to bed around 10:30 to 10:45 p.m. and would wake up around 4:30 a.m. or 4:45 a.m., giving herself approximately six hours of sleep per night.

Before June 3, 2003, Claimant had never worked nine or ten days in a row. However, from June 3 through June 12, 2003, Claimant was required by Employer to work eight– to nine-hour shifts every day, with the exception of a sixteen-hour shift on the last day. Because these dates fell within the May 29 to June 25 scheduling period, Claimant was aware before May 29 that she was required to work these consecutive days and that there was a possibility that she would have to work a double shift on June 12.

On June 12, 2003, Claimant arrived at work at 5:45 a.m. Around 12:30 or 1:00 p.m., Claimant learned that she was required to work a double shift. Claimant testified that she asked the assistant director of nursing, Cheri O' Neal, if she had to work the whole shift, and she was told that she did. Claimant stated that Cheri required her to work the extra shift even though she told Cheri that she was tired, exhausted, and "wore out" and did not think that she could work the extra shift.

Claimant's second shift on that day ended at 10:15 p.m., and she left work at approximately 10:25 p.m. Claimant admits that no one from Employer told her to drive anywhere after she clocked out and that she was not on any mission for Employer. Further, Claimant stated that it was a personal choice for her to drive home after her double shift, even though she could have rested or stayed at Employer's facility, or called her ex-husband or daughter to come pick her up.

On her way home, Claimant stopped by "T–Rex," a convenience store located about three blocks from Employer's nursing center, because it was her routine to stop there and buy lottery tickets and something to drink. After leaving T–Rex, Claimant took the long way home because she was afraid the alternative route would be flooded due to the rain that evening. Claimant recalls that she caught herself nodding off several times during the drive but does not remember anything about the accident, including leaving the road. William Storie, Claimant's ex-husband, went out looking for her when she did not return to their home after her shift that evening. William found Claimant's car in a ditch about 1 1/2 miles from their house.

Claimant's vehicle sustained substantial damage with one side caved in and the dash peeled over Claimant's body. Claimant sustained serious injuries and incurred medical expenses in excess of $85,000.

Henry W. Lahmeyer, M.D., testified by deposition on behalf of Claimant. Dr. Lahmeyer is a board-certified psychiatrist and neurologist and is also certified in sleep medicine. The Administrative Law Judge ("ALJ") found Dr. Lahmeyer to be the only credible expert witness in the

case. Dr. Lahmeyer stated that Claimant's work schedule, prior to the day of the accident, produced excessive exhaustion, fatigue, and uncontrollable sleepiness, and that it was a substantial factor in causing Claimant to fall asleep on June 12, 2003. Dr. Lahmeyer further stated that Claimant's cycle of sleep made her accumulate sleep debt and that she became sleep deprived because she was only getting about six hours of sleep on the nights before she worked. However, both Dr. Lahmeyer and Claimant agreed that Employer did not control Claimant's activities while she was off work and that Employer was not telling Claimant how much sleep to get per night.

On February 26, 2008, the parties appeared before the ALJ for a hearing. The ALJ issued an award on May 29, 2008, finding that Claimant's accident did not arise out of and in the course of her employment with Employer, and denied Claimant benefits against Employer.

Claimant filed an Application for Review with the Commission. On January 16, 2009, the Commission issued its unanimous Final Award Denying Compensation, affirming the findings and legal conclusions of the ALJ and attaching and incorporating the ALJ's decision in its award. Claimant appeals from the Commission's Final Award.

### Standard of Review

■ We will affirm the Commission's decision unless "(1) the Commission acted without or in excess of its powers; (2) the award was procured by fraud; (3) the facts found by the Commission do not support the award; or (4) there was not sufficient competent evidence in the record to warrant the making of the award." *Jones v. Washington University*, 199 S.W.3d 793,

795 (Mo.App.2006) (citing section 287.495[1] ). "A court must examine the whole record to determine if it contains sufficient competent and substantial evidence to support the award, i.e., whether the award is contrary to the overwhelming weight of the evidence." *Hampton v. Big Boy Steel Erection*, 121 S.W.3d 220, 222–23 (Mo.banc 2003).

■ When the Commission affirms and incorporates the ALJ's decision in its award, we examine the ALJ's findings as adopted by the Commission. *Jones*, 199 S.W.3d at 796. Moreover, we review questions of law without deference to the Commission. *Id.*

### Discussion

Claimant brings three points challenging the Commission's award denying her compensation. Because all three points are interrelated and intertwined with the Commission's conclusion that Claimant's accident did not arise out of and in the course of her employment, we address them together.

■ Claimant initially argues that because Dr. Lahmeyer concluded that Claimant's work schedule was a substantial factor in causing her injuries, the Commission erred by disregarding his expert testimony and substituting its own opinion as to medical causation. Employer, however, correctly observes that the Commission never reached the issue of the medical causation of Claimant's injuries because the threshold issue in this case was whether Claimant's accident, which without dispute was the medical cause of her injuries, arose out of and in the course of her employment. While the former is a fact question under section 287.020.2,[2] related to the causal

---

**1.** All statutory references are to RSMo 2000, unless otherwise indicated.

**2.** Section 287.020.2 provides:

connection between an accident and the claimant's injuries and generally requires expert testimony, *see Heiskell v. Golden City Foundry, Inc.*, 260 S.W.3d 443, 451 (Mo.App.2008); *Elliott v. Kansas City, Mo., School Dist.*, 71 S.W.3d 652, 658 (Mo. App.2002), *overruled on other grounds by Hampton*, 121 S.W.3d at 220, the latter is a question of law under section 287.120.1,[3] as applied to the facts of the case, where, as here, the facts are essentially undisputed, *Doerr v. Teton Transp., Inc.*, 258 S.W.3d 514, 522 (Mo.App.2008). Claimant fails to cite this Court to any legal authority for the proposition that the substantial factor element of medical causation in section 287.020.2 applies to the resolution of the legal question under section 287.120.1 of whether the accident arose out of and in the course of her employment. In the absence of such authority, this Court can not graft a "substantial factor" element into the relevant legal analysis under section 287.120.1, to which we now turn.

■■■ As a general rule, "[a]n injury 'arises out of the employment if it is a natural and reasonable incident thereof and it is 'in the course of employment' if the accident occurs within the period of employment at a place where the employee may reasonably be fulfilling the duties of employment." *Automobile Club Inter–Ins. Exch. v. Bevel*, 663 S.W.2d 242, 245 (Mo.banc 1984) (quoting *Garrett v. Indus. Comm'n of Mo.*, 600 S.W.2d 516, 519 (Mo. App.1980)). The burden is on Claimant to prove a basis for the claim and that the injury arose out of and in the course of her employment. *Van Winkle v. Lewellens Prof. Cleaning, Inc.*, 258 S.W.3d 889, 897 (Mo.App.2008). In determining whether the test was met, we consider the facts and circumstances of each individual case. *Stegman v. Grand River Reg'l Ambulance Dist.*, 274 S.W.3d 529, 533 (Mo.App.2009).

■ Section 287.020.5 provides:

Without otherwise affecting either the meaning or interpretation of the abridged clause, **"personal injuries arising out of and in the course of such employment"**, it is hereby declared not to cover workers except while engaged in or about the premises where their duties are being performed, or where their services require their presence as a part of such service.

It follows then that an employer generally is not liable for the injuries "sustained by an employee while en route from his home to his place of employment" or vice versa, because the injuries "are not sustained 'within the course and scope' of his employment and are, therefore, not compensable." *Cox v. Copeland Bros. Constr. Co.*, 589 S.W.2d 55, 56 (Mo.App.1979). "The rationale behind this principle is that the employee going to and from work is subject only to the common risks shared by the general public and not to any risk causally related to employment." *Davis v.*

The word "**accident**" as used in this chapter shall, unless a different meaning is clearly indicated by the context, be construed to mean an unexpected or unforeseen identifiable event or series of events happening suddenly and violently, with or without human fault, and producing at the time objective symptoms of an injury. An injury is compensable if it is clearly work related. An injury is clearly work related if work was a substantial factor in the cause of the resulting medical condition or disability.

An injury is not compensable merely because work was a triggering or precipitating factor.

**3.** Section 287.120.1, provides, in relevant part: "Every employer subject to the provisions of this chapter shall be liable, irrespective of negligence, to furnish compensation under the provisions of this chapter for personal injury or death of the employee by accident arising out of and in the course of the employee's employment[.]"

*McDonnell Douglas,* 868 S.W.2d 170, 171 (Mo.App.1994).

One exception to the general "going and coming" rule is the "special hazard" doctrine, which was first applied in *Hunt v. Allis–Chalmers Mfg. Co.,* 445 S.W.2d 400, 405 (Mo.App.1969). In *Hunt,* an employee was struck by a train while he was walking to work from a commonly used parking lot. *Hunt,* 445 S.W.2d at 403–05. The Court noted that "an employee was required to cross one set or another of Missouri Pacific Railroad tracks in order to gain access to the plant," and that because the injury occurred on the route that employees took to reach the employer's premises, "the special hazards of the route become the hazards of employment." *Id.* at 404–05. The Court reasoned that because the employee was subjected to the "peculiar risk" of the railroad crossing any time he had to get to or from employer's premises, "the employment involve[d] peculiar and abnormal exposure to a common peril which annexes itself as a risk incident to and inseparable from the employment." *Id.* at 408. Thus, the Court found that the employee in *Hunt* was different from members of the general public because he had "peculiar and abnormal exposure to a common peril." *Id.*

█ Claimant next argues that the "special hazard" doctrine applies here because her work schedule leading up to the accident caused her to be so fatigued and exhausted that she fell asleep while driving home from work. Apparently, because *Hunt* involved an accident in close proximity to the work site, *id.* at 408, Claimant relies on *Snowbarger v. Tri–County Elec. Coop.,* 793 S.W.2d 348 (Mo.banc 1990), to support her claim that, like the employee in *Snowbarger,* her injuries, sustained at a location remote from the job site, arose out of and in the course of her employment. Our Supreme Court noted that, while

*Hunt* addressed an employment hazard in a fixed location in close proximity to the place of employment, "[a] special situation or condition may also exist where there is a peculiar or abnormal exposure to a peril, whose risk is incident to or inseparable from the scene of employment." *Id.* at 350.

In *Snowbarger,* the employee, an electric line worker, was required by his employer to work 86 hours out of a 100.5–hour time period because of an emergency that was created by an ice storm. *Id.* at 349. During that period, the employee engaged in extensive physical labor, which included cutting trees with chain saws, digging holes by hand, and resetting utility poles. *Id.* When the employee finally left work at 1:00 a.m., he fell asleep while driving home and crashed into an oncoming vehicle. *Id.* The Court acknowledged the general rule that injuries occurring while driving to and from work are not compensable, but recognized the "special hazard" exception to that general rule where the employee "encountered an abnormal exposure to an employment related peril" when driving home after working "draining and grueling overtime hours spent in manual labor in extreme cold" as required by his employer. *Id.* at 350. Even though the accident occurred twenty-two miles away from the job site, the Court found that a "special hazard" existed because the employee worked 86 out of the 100.5 hours preceding the accident, which created the unusual risk of an automobile accident due to exhaustion. *Id.*

The facts in *Snowbarger* are distinguishable from the facts in the case at bar. The evidence here shows that Claimant typically worked a forty-hour or less work week from about March 6, 2003 until May 28, 2003. The time period at issue is from May 29, 2003 through June 12, 2003, which shows that Claimant clocked 100.6 work

hours in the fifteen days prior to her accident. The ALJ found that Claimant had three consecutive days off from May 31, 2003 to June 2, 2003, and that Claimant worked a total of 40.7 hours in the 100 hours prior to her accident. This is less than half of the total number of hours worked in the same time period by the employee in *Snowbarger*. *See id.* at 349. Additionally, Claimant worked a total of 100.6 hours in the fifteen-day period before her injury; whereas, *Snowbarger* worked approximately 86 hours in the four days preceding his accident. Thus, even though Claimant was required to work a double shift on the day of the accident, the total hours worked do not compare to the amount of "draining and grueling overtime hours spent in manual labor in extreme cold" by the employee in *Snowbarger*.

In addition to a comparison of the number of hours worked within a confined time period, *Snowbarger* is also distinguishable on another basis. There, the work schedule of "draining and grueling overtime hours spent in manual labor in extreme cold" deprived the employee of the opportunity to get his required daily sleep within that confined time period. *Id.* at 350. Unlike the situation in *Snowbarger*, however, Claimant here agreed that Employer did not control when she went to bed, when she woke up, or how much sleep she got. For example, when Claimant had to work the next day, she chose to go to sleep between 10:30 and 10:45 p.m., having to rise between 4:30 and 4:45 a.m. in order to start her shift on time at 5:45 a.m. Dr. Lahmeyer stated that Claimant's sleep cycle helped her accumulate sleep debt and that she became sleep deprived because on the nights before she worked she would only get about six hours of sleep when she needed eight. Even though Claimant worked several consecutive days in a row prior to her accident, she worked only eight to nine hours on each day, which left her sufficient time to get her required eight hours of sleep or more a night.

In other words, in *Snowbarger*, the employee's work schedule and duties did not give him sufficient time off to adjust his personal schedule to accommodate the demands of his work. Here, even though Claimant's work schedule gave her sufficient time off to adjust her personal schedule to the demands of her work, she chose not do so. Her failure in that regard is a common risk shared by the general public and is not a risk incident to and inseparable from Claimant's employment. As such, Claimant's accident does not come within the special hazard exception to the general "going and coming" rule, and thus did not arise out of and in the course of her employment. Claimant's points are denied.

### Decision

The award of the Commission is affirmed.

SCOTT, C.J., and RAHMEYER, J., concur.