**William L. ANDERSON, Appellant,**

**v.**

**PICKWICK HOTEL, Inc., and National Surety Corporation, Respondents.**

**No. 22664.**

Kansas City Court of Appeals.

Missouri.

May 5, 1958.

Allan M. Fisher, Felix B. Winston, Kansas City, for appellant.

Howell, Rayburn & Sanders, Norman S. Howell and Robert J. Sanders, Kansas City, for respondents.

SPERRY, Commissioner.

This is an appeal from a judgment affirming an award of the Industrial Commission denying plaintiff compensation for injuries received when he fell while an employee of defendant, Pickwick Hotel, Inc.

Defendant operates the Pickwick Hotel, Inc., in Kansas City, Missouri. It leases the property from an investment company which owns a large building of which the hotel portion itself is a part. The entire building extends from 10th Street, north along McGee, to 9th, thence east one block, to Oak, thence south one-half block, thence west one-half block, thence south one-half block, thence west one-half block to point of beginning. Defendant has under its control only a portion of the southwest part of the ground and mezzanine floors and the basement thereof, also the entire building from the third floor upwards consisting of hotel guest rooms and facilities. In this case, we are concerned only with that part of the first floor and basement which is leased to, occupied, and controlled by defendant.

Plaintiff was a bartender in the employ of defendant. He had charge of the Picadilly room, located in the southwest corner of the basement, beneath the lobby of the hotel. In that room intoxicating liquors are served until 12:00 midnight. Food is also served until 9:00 p. m. Plaintiff had supervision over all employees of defendant in this room. After 12:00 midnight no drinks were served but the room remained open for the accommodation of customers, until 1:30 p. m., when plaintiff closed the business, turned in his report and receipts, and went home.

The south part of the building, extending from McGee to an alley one-half block eastward, is occupied by a drug store and a coffee shop, with a stairway between said rooms, leading from the lobby downward to the Picadilly room. The coffee shop and drug store open into the lobby, to the north

thereof. Access to the lobby from McGee Street, to the west, is through large double doors, known as 927 McGee Street, at the southwest corner of the lobby. In the lobby there is a desk along the west side, and a cigar counter east of the north end of the desk. There is a partition wall running eastward across the width of the lobby from the east end of the cigar counter. To the north of this partition is the waiting room of the Greyhound Bus Company, which is the lessee of that part of the building. The waiting room may be reached, from the lobby, through large double glass doors located immediately east of the cigar counter. The cigar counter is open and accessible, on the north, to occupants of the bus waiting room. The partition between the waiting room and the lobby extends to the ceiling of the second or mezzanine floor. Entrance from the mezzanine floor of the hotel to the area north of the partition can only be had through a door kept closed and locked except for cleaning purposes. Defendant exercised no right of control or supervision over the premises used and occupied by the bus company, and its employees performed none of their duties on the latter premises.

The bus waiting room may be entered from McGee Street, through double doors known as 917 McGee, thence eastward through a vestibule with inclining floor, some 21 feet in length, to doors opening into the bus waiting room. A doorway also leads from this vestibule into a lunch room, partitioned off from the bus waiting room, and located north of the hotel lobby, on the west. The lunch room is operated by and is under the control of defendant. There is a door leading into this room from the bus waiting room and, immediately east of that door is a stairway leading from the bus waiting room down to a landing. To the east of this landing is a men's toilet and to the south of the landing is the Picadilly room. Customers and employees of the Greyhound Bus Lines, as well as some members of the general public, use this stairway to enter the Picadilly room and the toilet, and defendant was obligated, under the lease, to maintain the toilet for use of its guests as well as for the benefit of the bus company. The doorway leading from the Picadilly room to this entrance was locked around 12:00 midnight, as were the 10th Street and lobby entrances. Customers who were still in the room were permitted to leave through the 917 McGee Street entrance. After customers were out, not later than 1:30 a. m., plaintiff would close the business and leave.

On the date he received the injury, plaintiff closed the business at about the usual time. He made out his report, accounted for receipts and cash, placed the records and cash in the bag and walked through the basement, to the east, thence up a stairway and punched the time clock, entered the lobby through a doorway near the elevators, crossed the lobby to the north end of the desk, placed the bag in the vault, walked eastward to the doorway into the bus waiting room, crossed that room to the doorway leading into the vestibule which leads to the 917 McGee Street entrance, and fell in the vestibule. The last duty he was required to perform for defendant was to deposit the bag in the hotel safe. He habitually left the building through the waiting room and the vestibule because it was the nearest route to his car which he parked across from 917 McGee Street entrance. Plaintiff could have left by way of 927 McGee Street exit, from the hotel lobby, but no one had ever instructed him as to what exit he should use.

In affirming the award of the referee, the Commission found that the vestibule in which plaintiff fell was leased to and was controlled by the bus company, and was not a part of defendant's premises; that the accident did not arise out of and in the course of plaintiff's employment.

Plaintiff contends that there was no evidence at all, not even a scintilla, from which the Commission could have found the two

essential facts that they did find. He says that, according to the terms of the lease under which defendant operates the hotel, including the Picadilly room, it has control of the vestibule in which plaintiff fell; that it is included in the premises demised to it by lessor; and that, by the terms of the lease agreement itself, defendant is liable for its maintenance.

■ In this case we should review the whole record, including the legitimate inferences to be drawn therefrom, in the light most favorable to the award of the Commission, and then determine whether the Commission's findings, if supported by competent and substantial evidence, are contrary to the overwhelming weight of the evidence. Blair v. Armour & Company, Mo.App., 306 S.W.2d 84, 86.

■ At the time plaintiff fell he had completed his services for defendant, and had no further duty to perform before leaving the premises. Under no theory, under the facts here in evidence, can plaintiff recover unless the accident occurred on defendant's premises. Section 287.020 RSMo 1949, V.A.M.S.; Donzelot v. Park Drug Company, Mo.App., 239 S.W.2d 526, 529. See also Ossery v. Burger-Baird Engraving Company, Mo., 256 S.W.2d 805. The above being true, it was plaintiff's duty to prove facts from which it appears that he suffered his injuries while on defendant's premises, or at least such facts must clearly appear of record. Such proof is an essential part of his case. The evidence must establish plaintiff's right to compensation under the terms of the statute. Under a liberal construction of the law we cannot sustain his claim if the evidence to prove it is lacking.

■ After having described the premises leased to defendant, the lease proceeds to except from its operation "so much of the street, basement and mezzanine levels thereof as is to be occupied by bus terminal waiting room under lease dated November 22, 1949, with Southwestern Greyhound Bus Lines, Inc., *and other facilities* also shown on the blue prints prepared by J. F. Lauck and S. H. Seibern above referred to." (Italics ours). The lease between defendant and its lessor was in evidence; but neither the lease between lessor and Southwestern Greyhound Bus Lines, Inc., nor the blue print above mentioned, appear in the transcript.

There was no testimony to the effect that the vestibule constituted a part of the premises controlled by defendant. The only evidence from which such fact could be inferred is the lease itself. We cannot find, from that instrument, or from a sketch which was in evidence showing the general ground floor plan of defendant's lobby, the partition heretofore mentioned, the waiting room, and the lunch room, that the vestibule was under defendant's control or was leased to it. The vestibule leads from 917 McGee Street entrance directly into the bus waiting room. From the sketch and from testimony, it appears to be the only practical entrance from McGee Street into the waiting room. Customers or employees of the hotel had no need to use this entrance. The only connection between it and defendant was the fact that customers of the lunch room could enter that facility through a doorway from the vestibule. They could also enter it from the waiting room, and there was no doorway from the lobby into the lunch room. There is a dining room and coffee shop, both opening off the lobby of the hotel, also the Picadilly room, which may be entered from the lobby, all of which serve food.

We cannot hold that the Commission's findings and award are clearly contrary to the overwhelming weight of the evidence, on the whole record.

The judgment should be affirmed.

MAUGHMER, C., concurs.

PER CURIAM.

The foregoing opinion of SPERRY, C., is adopted as the opinion of the court. The judgment is affirmed.

All concur.