L. E. ATTERBERRY, Plaintiff-Appellant,

v.

PORTER DE WITT CONSTRUCTION COMPANY, Defendant-Respondent.

No. 7822.

Springfield Court of Appeals.

Missouri.

March 15, 1960.

Claude T. Wood, Richland, for appellant.

James E. Garstang, C. Lawrence Mueller, Louis W. Riethmann, St. Louis, for respondent.

McDOWELL, Judge.

Workmen's compensation action. L. E. Atterberry filed his claim for compensation with the Workmen's Compensation Commission December 3, 1955, for injuries sustained to his knees and back, naming Porter De Witt Construction Company, employer, and Liberty Mutual Insurance Company, insurer, as defendants. The cause was tried before Honorable Leonard E. Newton, Referee, resulting in an award for claimant for permanent partial disability in the sum of $4,200, being compensation for 120 weeks at $35 per week. Appeal was taken by claimant to the full Commission which affirmed the referee's award September 23, 1958. From this judgment claimant appealed to the Circuit Court where the award was affirmed and, thereafter, he appealed to this court.

February 23, 1955, claimant sustained injury to both knees while cutting down a tree with a chain saw in Pulaski County. He was holding the handle bars of the saw across his knees and when the tree fell toward him it knocked him down, broke the saw and caused the handles to strike him on the legs just above the knees, caus-

ing the injury complained of. Claimant continued working until February 28th, when he consulted his family physician, Dr. Harvey E. Nickles. The doctor examined him but gave no treatment. Some three weeks later claimant consulted Dr. Roberts, Company physician, who examined him and put an elastic bandage around his left knee. He was sent, on September 19, 1955, to see Dr. Frank D. Sundstrom in Springfield, where he was examined, X-rays of both legs taken and treatment given. He was placed in the Springfield Baptist Hospital October 27th where an operation was performed on his left knee. He was discharged from the hospital November 23, 1955, and has done no manual labor since. After his discharge from the hospital he received 23 daily physiotherapy treatments in Springfield, the last one being in March, 1957.

Besides seeing Drs. Nickles, Roberts and Sundstrom, claimant was examined by Dr. Snead on two different occasions, Dr. McCarroll of St. Louis on three different occasions, Dr. Diehr once and Dr. Zuber in Kansas City, who was selected by the court. He was examined several times by Dr. Miller of Waynesville.

Claimant testified he was 45 years of age, had completed the fifth grade and had been engaged in farm work and as a laborer for contractors all his life. He stated he started working for defendant January 2, 1955, and was injured February 23rd of that year. He gave this testimony:

"Q. Can you tell us the parts of your body that caused you pain at that time? A. At that time my legs was bothering me awful bad."

Claimant said he continued on the regular job but was sore and was told just to monkey around but that he did do some work. He gave this testimony:

"Q. Where did you have this soreness? A. In my legs and in my back too."

He testified he stayed at his work until September, 1955, but that all the time after

the injury he was having pain in both knees and in the lower part of his back. He said he could hardly work for the pain, stiffness and soreness in his legs.

Claimant, in describing the injury to his legs, gave this answer: "Well, they was just sore and they was a slippin'—catchin' sensation and I can't straighten that leg out and I haven't got no strength in it and I don't seem to handle it going up grade or down grade or climbin' steps or something like that."

As to his back he testified: "Well, the lower part of my back, my back aches and it's also stiff and when I bend over it's hard for me to straighten up you know with pain and difficulty."

He gave this testimony:

"Q. Have you tried to do any manual work or any type of physical manual work since you left the hospital in October, 1955? A. Yes, I have tried."

He testified that he tried to drive a string of posts and was unable to do so; that he tried to split wood and the pain was so bad he had to quit; that the pain was in his legs and back; that he tried to find employment with defendant, employer, but was refused; that he applied for work at a couple of filling stations and a shoe factory at Richland. He stated he had not worked since October and was not now receiving any treatment from any doctor. He testified he had never had any disability with his back or legs prior to this injury.

By agreement between the parties the medical records of the doctors who treated and examined claimant were offered in evidence.

Dr. Nickles testified that he first saw claimant at his office in February 28, 1955; that he was complaining of swelling, pain and tenderness in both knees and particularly the left knee. He stated he had been continually seeing claimant up to the present time; that he probably had examined him some 20 or 25 times. The doctor, in a very lengthy report, set out his findings and then made this statement:

"Q. Doctor, do you have an opinion as to how much permanent partial disability this man has sustained as a result of this accident of February 23rd, 1955? A. Eighty percent of the body as a whole."

The doctor further answered: "Yes, I feel the man has been completely disabled to conduct any gainful occupation."

Dr. William H. Snead reported that he examined claimant in his office November 26, 1957; that the only complaints of claimant then were of pain and disability in the left knee with some discomfort in the right knee and also complaints of low back pain. After setting out his findings of disability he gave this evidence: "In my opinion this man has forty percent disability of the body as a whole resulting from the disability to his left leg due to the incomplete extension and instability. Feel this is probably aggravating a pre-existing unstable lumbo-sacral joint which is the reason for his present backache. It is my feeling that he has been disabled since the time of the accident and he has been unable to do manual labor since that time."

Dr. A. H. Diehr testified, by deposition, that he examined claimant October 16, 1957, in his office. The evidence shows that he made a complete examination, took X-rays of the knees and back. Among his findings he stated he examined claimant's back and that the spine was in good alignment but that there was a slight appearance of curvature, which was corrected when claimant was sitting or standing on one leg. He made a radiographic examination and found no evidence of any bone injury, no shifting of his pelvis and no dislocation of the sacroiliac joints; that the general physical examination showed claimant to be in good condition. He testified that taking into consideration the disability of the left knee and of the right knee plus that of the back, which has resulted from faulty posture, in his opinion, constituted disability of somewhere between fifty-five and

sixty per cent of the man at this time. The doctor's report of his findings as to the injury of claimant, dated April 17, 1958, (in evidence as claimant's exhibit [B]), gives conclusions that there is considerable disability existing in both the left and right knee and, in his opinion, some disability existing in the back due to the way claimant has to walk. He stated: "He walks with a very definite limp with the left knee in flexion to a 20 degree angle. This is the maximum that it could be extended when lying down and forcibly extending the knee. This interferes with the normal weight bearing angle of his body and is sufficient that I feel he could experience a discomfort in his "back from having to walk the way he does. There is some muscular contraction in palpating his back when lying down. His movements were not limited nor were they restricted essentially negative."

The doctor stated the left knee had a high percentage of disability and slight loss in flexion. He gave it as his opinion that the disability in the left knee would be about sixty per cent, the right knee twenty five per cent and the back between ten and fifteen per cent and, as an overall estimate as to the man as a whole, the disability would be somewhere between fifty-five and sixty per cent.

The report of Dr. C. Miller, M. D., of Waynesville, Missouri, states that he examined claimant in his office October, 1956. He sets out in his Prognosis and Conclusion that claimant has an unstable left leg due to stiffness and pain in the left knee joint; that this disability aggravates the lesser disability of the right knee and causes him to hold his spine in an unnatural position. He gives it as his opinion that claimant has an eighty per cent permanent disability of the body as a whole.

Employer and insurer offered in evidence exhibits (5) to (16) inclusive, being medical reports from doctors who examined claimant. Exhibit (8) is a medical report, dated September 20, 1955, furnished by Frank D. Sundstrom, M. D., an Ortho-

paedic Surgeon. After setting out the results of his examination and treatment of claimant, the doctor made this comment: "This patient has an internal derangement, knee, left, due to tear of the medial semilunar cartilage and internal derangement of the knee, right, due to minor tear of the medial semilunar cartilage. He should be afforded the opportunity to recover by performing a medial meniscectomy of the left knee. It is my feeling that if his left knee function returns to normal that the right knee will no longer be a problem. I will appreciate you notifying me when authorization for treatment is given so that arrangements can be made with the patient for his operative treatment. I believe that his disability will continue until such treatment is completed."

Dr. Sundstrom's report, dated November 18, 1955, states that claimant underwent surgical treatment October 27, 1955, and was found to have a torn left medial meniscus. On January 9, 1956, Dr. Sundstrom reported that since November 18, 1955, the patient had been making slow progress and suggested physiotherapy treatments. On March 29, 1956, Dr. Sundstrom reported that at the present time he would estimate the patient has a permanent partial disability of ten per cent at the level of the right knee joint and a permanent partial disability of forty per cent at the level of the left knee joint. On March 27, 1957, Dr. Sundstrom reported: "This patient has not benefited from his course of physical therapy making his disability the same as noted previously. No further treatment is recommended."

The medical report of Dr. Harold V. Zuber, a physician appointed by the court, states that claimant was examined November 20, 1957. After stating the history of the accident as related by claimant to the doctor and the medical findings from his examination, he stated: "If the knee does not extend with general anesthesia, we feel that this man will present a permanent partial disability of the left lower extremity at the knee joint in an amount approximating

35%. If under general anesthesia the left knee does extend, then we feel that his rating shoud be 15% to 20% on a permanent basis and at the level of the left knee joint.

"We are unable to understand the condition of the left knee completely since this man was injured in 1955 and also if the right knee was injured why had there been no treatment. If it is admitted that the right knee was injured, then the existing disability, in our opinion, must be due to trau*ms*. We feel that this patient does present a 15% disability in the right knee but we are unable to ascertain definitely whether or not it is due to trauma or to the processes of aging, referred to frequently by wear and tear. There is less flexion than one would expect in an average knee in a man of this age. This patient also has some chondromalacia on the posterior surface of the right patella.

"We find no evidence of disability in the back which may be attributable to trauma."

The medical report of Dr. Edwin C. Ernst, M. D., shows the following finding: "*Lumbar Spine & Sacrum:* There is a slight right scoliosis of the lumbar spine. The vertebrae appear healthy and intact and the intervertebral spaces are relatively uniform. There is no evidence of fracture.

"*Left Knee:* The medial joint space remains narrowed and there is slight elevation of the articular surface of the medial plateau. There is no evidence of fracture or dislocation."

Dr. H. Relton McCarroll, M. D., reported January 20, 1958, that since the doctor's last report forwarded to Dr. Nickles of Waynesville, he has examined claimant January 17, 1958. He states that claimant has made no improvement in his knee so far as he can tell; that he continues to have pain in the knee and at times in walking the knee seems ·to "grab" and at times has caused him to fall. The knee at times seems to lock on him to the extent that he must "wiggle around" before he can use it. He also has symptoms referable to the lower portion of his back in which the symptoms had appeared prior to the operation. He states that the back symptoms have persisted and seemed to get worse; that claimant has not returned to work. After giving the results of his examination, he states: "Based on this patient's present findings, I would estimate the residual disability for the left lower extremity to be appproximately 35% at the level of the knee. Any estimate of residual disability as far as his back symptoms are concerned would have to be based on subjective symptoms."

We think it unnecessary to set out further medical reports offered in evidence, deeming the evidence herein sufficient to decide the issues involved.

Appellant relies upon two alleged errors for reversal. First, that the Industrial Commission erred because the overwhelming weight of the evidence is contrary to the conclusion that the Commission reached, and that the overwhelming weight of the evidence shows that the claimant has far more permanent disability than the amount of the award of the Commission, and, secondly, that the Industrial Commission erred because the overwhelming weight of the evidence showed that the claimant was still temporarily totally disabled at the time of the hearing and that the award should have been given for temporary total disability rather than permanent partial disability.

■ In considering the first alleged error we emphasize at the outset that, although on judicial review the courts are authorized to determine whether, upon the entire record, the Industrial Commission reasonably could have made the findings and award under consideration, this does not mean that either the circuit or the appellate court should substitute its own judgment on the evidence for that of the Commission, but, on the contrary, the reviewing court must set aside the findings and award of the Commission only if they

are clearly contrary to the overwhelming weight of the evidence, when the evidence in its entirety, including all legitimate inferences deducible therefrom, is reviewed in the light most favorable to such findings and award. Heaton v. Ferrell, Mo.App., 325 S.W.2d 800, 802 [1]; Hogue v. Wurdack, Mo.Sup., 316 S.W.2d 523, 526; Marie v. Standard Steel Works, Mo.Sup., 319 S.W.2d 871, 880 [11, 12] (and cases cited therein); Anderson v. Pickwick Hotel, Mo.App., 313 S.W.2d 39, 42 [1]; Brown v. Anthony Manufacturing Company, Mo. Sup., 311 S.W.2d 23, 27 [1, 2], (and cases cited.)

Appellant cites Michler v. Krey Packing Co., 363 Mo. 707, 253 S.W.2d 136, 143. This is a workmen's compensation action where claimant claimed to be the widow of deceased employee. The Industrial Commission found that claimant was never legally married to the decedent and was, therefore, not a dependent of decedent under the Act. In this case the Commission made a general finding that the marriage was not legal. The court held that the findings of the Commission should have made sufficient statement of facts to show how the controlling issue had been decided. On page 143 of 253 S.W.2d, the court makes this statement:

" * * * In fairness to claimant, we think the Commission should make findings sufficient to show whether it denies her claim on a question of law or an issue of fact, either or both."

Appellant cites Cheek v. Durasteel Co., Mo.App., 209 S.W.2d 548. This case lays down the rule as followed in Missouri that the court of appeals has the duty to decide whether the compensation commission could have reasonably made its findings and reached its results upon a consideration of all the evidence before it, and to set aside the trial court's decision affirming the award if it is clearly contrary to the overwhelming weight of the evidence. We see nothing in the opinion contrary to the general law as followed in the cases above cited.

It is appellant's contention that the award in this case was purely against the overwhelming weight of the medical evidence in that the evidence on behalf of claimant showed that three years after this accident claimant was totally disabled to perform any heavy work and had not returned to work since his operation in October, 1955. In his argument appellant states that Dr. Nickles, who had seen claimant more than any other doctor, gave it, as his opinion, that claimant was eighty per cent permanently disabled at the present time from doing any type of heavy work; that Dr. Miller, in his medical report, gave it as his opinion that claimant was eighty per cent permanently disabled and that Dr. Diehr, by deposition, gave the permanent disability of claimant as between fifty-five and sixty per cent and Dr. Snead as forty per cent. Appellant, however, admits that the medical reports of Dr. H. R. McCarroll of St. Louis evaluated the permanent disability as thirty five per cent of one knee and fifteen per cent of the other knee and that Dr. Harold Zuber, selected by the court, evaluated his permanent disability as thirty five per cent of one knee and fifteen per cent of the other, based upon present findings and then appellant, in his argument and brief, makes this statement:

" * * * The dispute in the claim is solely of a medical nature and claimant feels that clearly the weight of the evidence shows that the claimant has far more permanent disability to the man as a whole than what he was given credit for by the Industrial Commission."

In fact, appellant practically admits that there was medical testimony to support the award of the Commission but argues that the overwhelming weight of the testimony was against such findings.

With this contention we cannot agree. There was sufficient, competent evidence in the record to support the award. Dr. McCarroll, who made three separate examinations of claimant and whose reports of such examinations are in the rec-

ord, allowed less permanent total disability than the Commission awarded. Dr. Mc-Carroll was selected by claimant as well as by defendants. Dr. Zuber's estimate of claimant's disability allowed less permanent disability than was awarded by the Commission. The reasonable inferences to be drawn from the findings of the Commission and the award is that it allowed permanent total disability to both knees of claimant and to his back. This is not disputed by claimant. We are in no position, under the law, to substitute our judgment on the evidence for that of the Commission. We are only authorized to set aside findings and award of the Commission if they are clearly contrary to the overwhelming weight of the evidence when the evidence in its entirety, including all legitimate inferences reasonably deducible therefrom is viewed in light most favorable to such findings and award.

We cannot agree with appellant's contention under his second alleged error. We think the overwhelming weight of the testimony supports the finding of the Commission of partial total disability. It will be noted in Dr. Sundstrom's last report that he states no further treatment recommended. The testimony of claimant is that he is not receiving any treatment for his condition and we think the whole theory of the case, including the medical testimony offered by claimant, is that he was permanently disabled. Each doctor makes his estimate on partial permanent disability. We are only required to determine whether the finding of the Commission is supported by competent and substantial evidence on the whole record. That is the rule of law laid down by the court in Wood v. Wagner Electric Corp., 355 Mo. 670, 197 S.W.2d 647, cited by appellant under this alleged error. The facts in the Woods case are so different from the facts in the instant case as to not support his contention. The court stated that on the evidence in the record award could only be for temporary partial disability under Section 3704, because

he was able to continue his work with defendant, until he left after he was unable to rent his farm, and was likewise able to do some farm work.

Smith v. National Lead Co., Mo.App., 228 S.W.2d 407, cited, in no way supports appellant's contention.

We do not agree with appellant's argument that the doctors testified that the medical evidence supports this alleged error. Our conclusion, from an examination of the whole record, is that the cause was tried upon the theory that claimant was totally disabled.

Judgment affirmed.

STONE, P. J., and RUARK, J., concur.