**Howard PULLIAM, Jr., et al.,
Plaintiffs-Respondents,**

v.

**McDONNELL DOUGLAS
CORPORATION,
Defendant-Appellant.**

No. 38162.

Missouri Court of Appeals,
St. Louis District,
Division Three.

July 26, 1977.

Motion for Rehearing and/or Transfer
Denied Sept. 12, 1977.

Application to Transfer Denied
Oct. 11, 1977.

694

Evans & Dixon, Edward W. Warner, Raymond J. Flunker, St. Louis, for defendant-appellant.

Padberg, McSweeney & Slater, R. J. Slater, St. Louis, for plaintiffs-respondents.

GUNN, Judge.

Howard Pulliam was struck by a Norfolk and Western Railroad Company freight train as he was walking between his home and place of employment at the McDonnell Douglas Corporation. Plaintiffs-respondents, as Pulliam's surviving dependent children and former wife, filed claim for death benefits under § 287.240 RSMo. 1969.[1] The referee's award denied compensation. On application for review of the referee's award, the Missouri Industrial Commission found that Pulliam's death arose out of and in the course of his employment and awarded death benefits to plaintiffs. McDonnell Douglas appealed to the circuit court, and the Commission's award was affirmed; hence, this appeal by McDonnell Douglas.

The controlling issue on this appeal is whether, for the purpose of awarding workmen's compensation death benefits, the McDonnell Douglas premises extended to the main line railroad track upon which Pulliam was killed. We find that the premises were not so extended and reverse the award of benefits to plaintiffs.

McDonnell Douglas, where Pulliam worked, employed about 26,000 persons at the time of Pulliam's accident. For security measures, the McDonnell Douglas industrial complex is surrounded by a high cyclone fence with numbered gates interspersed to allow access to and from the facilities. On the day of his accident Pulliam, who lived in a trailer court a short distance from McDonnell Douglas, was heading in the direction of gate 44A adjacent to Banshee Road when he was struck and killed by a freight train on the main line track of the Norfolk and Western Railroad Company. From the referee's report, which we find to contain an accurate factual statement, we follow the route which

Pulliam took to work on the date of his fatal accident:

"The employee [Pulliam] lived in a trailer court within [a] triangular-shaped residential area to the north of the railroad right-of-way and Banshee Road. On the date of the accident he had left his home to go to work at about 3:35 in the afternoon and had walked a couple of blocks south on Summit Avenue. When he came to the end of Summit Avenue at the railway right-of-way he crossed a small ditch and ascended a slight hill up on to the railway right-of-way. He then crossed either one or two of the northern main Norfolk and Western line. He then proceeded south about ten feet or less, and walked into the side of a moving eastbound Norfolk and Western train on the southernmost of the two Norfolk and Western main tracks. Had he not been fatally injured at this point, his path would have taken him to the southern boundary of the railway right-of-way where he would have descended a fairly-steep path some eight feet down to Banshee Road. He would have crossed Banshee Road and would have gone into gate 44A.

The path leading down from the right-of-way to Banshee Road is one which has obviously been worn by many years of foot traffic. It would be impassable in bad weather, except for a moderate amount of railroad gravel or ballast which covers it. It is obvious that this path has not been constructed, improved or maintained by anybody but is a path worn by pedestrian traffic taking a shortcut between McDonnell gate 44A and the residential area to the north of the tracks. In spite of the fact that there are thousands of employees at McDonnell Douglas, only a relatively small number of people would use this shortcut at any given time. These users would include a

---

1. Pulliam's former wife sought burial expenses.

 Statutory references are to RSMo 1969, as Pulliam was killed February 17, 1970. There have been subsequent amendments to the Missouri Workmen's Compensation Law, but such amendments are not applicable here.

few residents of the nearby residential area, a few pedestrians who might have parked their cars in that area, or a few people heading toward the filling stations and bars that are on Lindbergh [Blvd.], some three blocks north of the railway right-of-way."

The following is a graphic portrayal of the accident site showing the route Pulliam was taking to work:

PULLIAM'S ROUTE — — — — —

While certain other gates providing access for the McDonnell Douglas facilities along Banshee Road had uniformed guards operating electric traffic controls for traffic across Banshee Road, there was no traffic control signal for gate 44A. Nor was there any cross walk indicated across Banshee Road for pedestrian traffic to cross over for ingress and egress to gate 44A. Gate 48, about 400 feet west of gate 44A,[2] had traffic control signals operated by company guards. East of the accident site, where McDonnell Douglas' property extends to both sides on Banshee, an overpass and underpass provide access between the McDonnell Douglas property separated by Banshee permitting pedestrian traffic to travel across Banshee Road without being exposed to the hazards of vehicular traffic. There was no indication that pedestrian traffic was to cross Banshee Road to utilize gate 44A in contrast to certain other gates along the road where there were traffic control signals such as at gate 48 or an overpass or underpass.

There was no evidence to suggest that McDonnell Douglas had any right of control or could interfere with the use of the Nor-

---

**2.** At some points in the record, the distance between gates 48 and 44A is indicated to be 200 feet, but the scaled master plan of the McDonnell Douglas plant, introduced as claimants' (plaintiffs') Exhibit H, shows the distance to be 400 feet.

folk and Western's right-of-way or adjoining property, particularly the residential area in which Pulliam lived or along the route he took to work. It is readily apparent that there was not much that McDonnell Douglas could have done to prevent Pulliam from taking the route he took or from crossing over the railroad main line track on which he was killed. Obviously, a string of parked railroad cars, a fossett and other obstacles did not provide a sufficient barrier, as Pulliam made his way by either crawling under, over or through the parked railroad cars to meet his appointment with death. It is doubtful if any kind of revetment would have sufficiently impeded his forward movement.

Relying particularly on *Hunt v. Allis Chalmers Manufacturing Co.*, 445 S.W.2d 400 (Mo.App.1969); *Bountiful Brick Co. v. Giles*, 276 U.S. 154, 48 S.Ct. 221, 72 L.Ed. 507 (1928), and *Cudahy Packing Co. v. Parramore*, 263 U.S. 418, 44 S.Ct. 153, 68 L.Ed. 366 (1923), the Industrial Commission applied the rule of extension of premises to encompass the Norfolk and Western main line track on which Pulliam was killed. The Commission found that the hazard Pulliam encountered traveling over the railroad tracks to and from work was a risk incident to employment. In so finding, the Commission considered: 1) that the railroad spur line track from the main line entered into McDonnell Douglas property; 2) the location of the gates along Banshee Road and traffic control arrangements for pedestrian traffic across Banshee; 3) that the location of gate 44A across Banshee Road from a foot path offered open invitation to workers to walk across the railroad tracks by use of the foot path; 4) that the use of the foot path by employees was known and permitted without remonstrance, although such use could have been prohibited by the exercise of municipal police power over Banshee Road delegated to the security guards.

The circuit court, relying on *Hunt v. Allis Chalmers Manufacturing Co., supra*, affirmed the Commission's award.

 We first indite a few legal precepts which guide our review of Industrial Commission rulings. As succinctly stated in *Webb v. Norbert Marking Construction Co.*, 522 S.W.2d 611, 614 (Mo.App.1975):

"[T]his court must determine if the award of the Commission is supported by competent and substantial evidence upon the whole record, Mo.Const. Art. V, § 22, V.A.M.S., and all of the evidence and legitimate inferences arising therefrom must be viewed in the light most favorable to the award. We are not at liberty to substitute our own judgment for that of the Commission and may set aside an award only if there is not substantial competent evidence to support the award or if the findings of the Commission are clearly contrary to the overwhelming weight of the evidence."

See also *Lindquist v. Container Corporation of America*, 537 S.W.2d 676 (Mo.App.1976); *Snider v. Green Quarries, Inc.*, 535 S.W.2d 274 (Mo.App.1976); *Homan v. American Can Co.*, 535 S.W.2d 574 (Mo.App.1976). We are required to review the whole record and reverse or modify awards which are not based on competent and substantial evidence and when such awards could not have reasonably been made. *Duncan v. A.P. Green Refractories Co.*, 522 S.W.2d 639 (Mo.App.1975). We, of course, review the award of the Commission and not the referee's award. *Begey v. Parkhill Trucking Co.*, 546 S.W.2d 529 (Mo.App.1977).

 Plaintiffs bottom their right of recovery on § 287.120(1), which subjects the employer to liability for an employee's injury or death "arising out of and in the course of" employment. But it is the plaintiffs' burden to establish that Pulliam's death occurred within the statutory constraints of "arising out of and in the course of" his employment with McDonnell Douglas. As stated in *Begey v. Parkhill Trucking Co., supra* at 531:

"[A]n injury arises 'out of' the employment if it is a natural and reasonable incident thereof and is the rational consequence of some hazard connected with the employment, and rises 'in the course

of' the employment when it occurs within the period of employment, at a place where the employee may reasonably be and while he is reasonably fulfilling the duties of his employment."

The right of recovery is further restricted by § 287.020(6), which provides:

"6. Without otherwise affecting either the meaning or interpretation of the abridged clause, 'personal injuries arising out of and in the course of such employment', it is hereby declared not to cover workmen except while engaged in or about the premises where their duties are being performed, or where their services require their presence as a part of such service." (original emphasis)

The meaning of the foregoing restrictive language of § 287.020(6) has frequently been held to limit recovery to injuries occurring on the employer's premises and not to cover injuries sustained by the employee going to and from work. *Person v. Scullin Steel Co.*, 523 S.W.2d 801 (Mo. banc 1975); *Hunt v. Allis Chalmers Manufacturing Co.*, supra; *Kunce v. Junge Baking Co.*, 432 S.W.2d 602 (Mo.App.1968); *Kammeyer v. Board of Education*, 393 S.W.2d 122 (Mo. App.1965); *Hawley v. Eddy Brothers, Inc.*, 371 S.W.2d 338 (Mo.App.1963); *Anderson v. Pickwick Hotel, Inc.*, 313 S.W.2d 39 (Mo. App.1958). See generally, Mo.Dig., Workmen's Compensation ▮ 711, 719.[3] The rationale behind this principle is that the employee traveling to and from work is not performing a service benefitting his employer; hence, his activity is not incident to his employment and his injury does not "arise out of" his employment. *Hunt v. Allis Chalmers Manufacturing Co.*, supra. Alternatively, the rule is supported by reasoning that the employee going to and from work is subject only to the common risks shared by the general public and not to any risk casually related to employment. *Kammeyer v. Board of Education*, supra.

In this case, Pulliam was on his way to work and was not upon his employer's premises, so that recovery for his death would normally be precluded. Therefore, if plaintiffs are to prevail, the circumstances must support an exception to the general rule. The exception relied upon by the Industrial Commission in awarding death benefits to plaintiffs involves an implied extension of employer's premises to include the site of the injury. As stated in I Larson's Workmen's Compensation Law, § 15.-13:

"The commonest ground of extension is that the off-premises point at which the injury occurred lies on only route, or at least on the normal route, which employees must traverse to reach the plant, and that therefore the special hazards of that route become the hazards of employment."

This doctrine received substantial support when the U.S. Supreme Court used it as a basis to support awards in two cases from Utah arising under statutory language nearly identical to the language of the Missouri statute. *Bountiful Brick Co. v. Giles*, supra; *Cudahy Packing Co. v. Parramore*, supra.

▮ In this case the referee and the Industrial Commission each issued lengthy opinions which dealt fully with the extension of premises doctrine in Missouri. The referee specifically found the exception not to apply; the Commission found the exception applicable. But in so doing, the Industrial Commission majority found facts discrepant from the findings of the referee, to wit: that there were guards regulating pedestrian traffic and cross walk lines painted across Banshee Road at gate 44A. If true, these facts could support an inference that McDonnell invited and encouraged employees to cross the road at that point, and the inference could extend to include an invitation or encouragement to use the path followed by Pulliam across the railroad tracks. These inferences could also support the Industrial Commission majority in reversing the ruling of the referee and finding that

---

**3.** *Hunt v. Allis Chalmers Manufacturing Co.*, supra, and *Kunce v. Junge Baking Co.*, supra, give thorough and excellent treatment and a collection of Missouri workmen's compensation law relating to employees' recovery for off premises injuries.

McDonnell had impliedly extended its premises to include the accident site. But plaintiffs and McDonnell Douglas agree that these particular findings of the Industrial Commission were erroneous; that there were no guards and no painted cross walk lines across Banshee Road at gate 44A. While the Circuit Court corrected the Industrial Commission's factual error, it could not correct the effect of the error on the Commission's award. A key element is now missing as a basis for award of compensation. We are thus left with the central issue of whether the McDonnell Douglas premises extended to the Norfolk and Western main line track where Pulliam was killed, or, as stated in *Hunt v. Allis Chalmers Manufacturing Co., supra,* 445 S.W.2d at 409:

> "The determining factor is whether the hazard is encountered upon a way which, to all intents and purposes, has been appropriated by the employer as his premises."

Considering the circumstances here, we cannot say that the railroad main line track on which Pulliam was killed was "so appropriated by the employer or so situate, designated and used by the employer and his employees incidental to their work as to make them for all practical intents and purposes, a part and parcel of the employer's premises and operation." *Kunce v. Junge Baking Co., supra,* 432 S.W.2d at 607.

In awarding plaintiffs' benefits, the Industrial Commission made the following erroneous finding:

> "The employee [Pulliam] and his fellow workers were in effect invited to cross over the railroad right-of-way by means of the foot path by the location of the open gates, the traffic control light maintained by McDonnell Douglas and operated by its guards, the lines painted on Banshee Road by McDonnell Douglas and the pedestrian aid rendered by McDonnell Douglas guards."

With the sole exception that gate 44A was open, none of the foregoing components of the alleged invitation cited by the Commission actually existed. Thus, evidence supporting the Commission's award was erroneous and not competent. See *Duncan v. A.P. Green Refractories Co., supra.* As mentioned, the circuit court corrected the factual error of the Industrial Commission by noting that there were no control lights, pedestrian aids or cross walk lines on Banshee Road at gate 44A. But without such invitation components, as found by the circuit court not to be present, although erroneously found to exist by the Industrial Commission, we believe that there is neither competent nor substantial evidence to support an award of compensation. The facts before the Commission were insufficient to warrant the application of the extension of premises doctrine favorably to plaintiffs. See *Donzelot v. Park Drug Co.,* 239 S.W.2d 526 (Mo.App.1951). We thus conclude that the essential elements for applying the extension of premises doctrine are lacking here, that is, those elements referred to in Larson's Workmen's Compensation Law, supra, and relied on in *Hunt v. Allis Chalmers Manufacturing Co., supra.*

Plaintiffs stress that *Bountiful Brick Co. v. Giles, supra; Cudahy Packing Co. v. Parramore, supra;* and *Hunt v. Allis Chalmers Manufacturing Co., supra,* afford precise and sturdy basis for upholding the award of compensation. We do not believe so in this case. In *Parramore,* recovery was justified because the employee: "had no other choice than to go over the railway track in order to get to work; and he was in effect invited by his employer to do so. And this he was obliged to do regularly and continuously as a necessary concomitant of his employment, resulting in a degree of exposure to the common risk beyond that to which the general public was subjected." *Cudahy Packing Co. v. Parramore, supra,* 44 S.Ct. at 155. See also, *Bountiful Brick Co. v. Giles, supra.* This principle was recognized in Missouri in *Hunt v. Allis Chalmers Manufacturing Co., supra.* The award of compensation in *Hunt* was supported in part by the fact that the employee, struck on railroad tracks between an off-premises parking lot and the plant yard, would have had to cross the tracks at some point by any route he had to take to work. The award was affirmed even though an alternative crossing was protect-

ed by a gate, bell and electric signals. But that factor does not exist in this case. Had Pulliam gone to work by public road, he would not have had to cross the railroad tracks. The road passed under the tracks by either of the closest alternate routes he could have chosen. Thus, he could have avoided the risk entirely.

Plaintiffs argue that the alternate routes open to Pulliam were more circuitous and lengthy than the route he traversed. There is support for this position in *Bountiful Brick Co. v. Giles, supra,* where the Supreme Court affirmed an award to an employee who had chosen a more dangerous route merely because it was less circuitous and more convenient. But in doing so the Court held only that employer's liability under such circumstances was not a denial of due process. The holding was permissive and did not constitute a mandate that states must impose such liability, and the Missouri Workmen's Compensation statute does not do so.

Moreover, there is a further distinguishing factor in *Giles.* In *Giles* the record indicates that the more convenient route was followed by all the brickyard workers and that the entrance by road was never used, while it is apparent here that most of the McDonnell employees used guarded entrances.

Plaintiffs argue that the foot path leading to gate 44A had existed for so many years that McDonnell must have known of its use by its employees. From this assumed knowledge plaintiffs impute McDonnell Douglas' acquiescence in the use and amplify acquiescence to approval of use and, finally, the approval and invitation of the path's use. There is evidence that both gate 44A and the path had been used for as much as 15 years. But the plaintiffs do not suggest that the gate was fashioned to accommodate the use of the path; in fact, we believe it reasonable to assume that the use of the pathway across the railroad track developed after the existence of gate 44A. Certainly, it is manifest that the number of employees making use of the path to enter gate 44A is puny compared with the overall number of McDonnell Douglas employees, so that the effect is that the path was not the "normal" or recognized means of ingress and egress for employees as in *Hunt, Giles* and *Parramore.*

In *Hunt v. Allis Chalmers Manufacturing Co., supra,* the court found that the employer had invited employees to cross over railroad tracks from a parking lot to the plant yard. While the parking lot was owned by another company, Allis Chalmers had arranged for use of the lot by its employees and had issued instructions for the lot's use. Further, Allis Chalmers had installed a gate in the fence around its plant to facilitate the employees' travel across the tracks from the parking lot. The situation here is far different, and we do not consider it to be a reasonable inference that the existence of gate 44A was an invitation for employees to traverse from the area in which Pulliam lived over the terrain which he crossed on his way to work.

Plaintiffs claim that McDonnell Douglas could have prohibited the use of the path. We have already noted that Pulliam, by crawling over or through freight cars, was determined to overcome any impediment to his travel. The land traversed by Pulliam was privately owned. McDonnell Douglas had no association with the landowners by which it would have controlled the use of the land by its employees. In such regard, *Hunt* is clearly distinguishable. While McDonnell Douglas guards were stationed at other gates and were deputized by municipal police authorities to control traffic on Banshee Road, they had no authority to control trespassers on private land across from McDonnell Douglas on the route which Pulliam took. We therefore believe it would be unreasonable to find that McDonnell Douglas could have prevented employees from using the route on which Pulliam was killed. We do not deem the fact that spur lines moved into the McDonnell Douglas facilities from the main line to be of particular significance in this case.

McDonnell Douglas employees using the path were subject to no greater risk than any other member of the general public making use of the pathway. As such, a basis for a favorable award for plaintiffs does not exist. *Kammeyer v. Board of Education, supra; Donzelot v. Park Drug Co.*

*supra; Tucker v. Daniel Hamm Drayage Co.,* 171 S.W.2d 781 (Mo.App.1943). Plaintiffs urge that no one but McDonnell Douglas employees could utilize the path as it ended at the security fence enclosing McDonnell Douglas' premises. But there is more. The path ended at a heavily used public road; the fence was across the road. Further, the path commenced in a residential neighborhood, and it would require substantial speculation to determine what use of the path was made by those living in the residences. Clearly the area was not so isolated or so exclusively associated with McDonnell Douglas as to warrant the assumption that it could be used only by its employees.

We conclude that Pulliam's injury leading to his death did not arise out of nor was it in the course of his employment with McDonnell Douglas; that the McDonnell Douglas premises did not extend to the point where Pulliam was killed. Therefore, the death benefits under § 287.240 should have been denied.

The judgment is reversed.

KELLY, Jr., P. J., and WEIER, J., concur.