**Michael GILDEHAUS, Deceased, Ray Gildehaus, et al., Dependents, Claimants,**

v.

**HUSKY CORPORATION, Employer.**

No. 50727.

Missouri Court of Appeals, Eastern District, Division One.

September 2, 1986.

Motion for Rehearing and/or Transfer to Supreme Court Denied Oct. 1, 1986.

Application to Transfer Denied Nov. 18, 1986.

James E. Hullverson, Jr., St. Louis, for claimants.

Edward W. Warner, St. Louis, for employer.

SNYDER, Chief Judge.

This is an appeal from an award of the Labor and Industrial Relations Commission denying workers' compensation benefits for the death of Michael Gildehaus. The administrative law judge awarded death benefits to the dependents of Mrs. Gildehaus, but the Labor and Industrial Relations Commission, in a split decision, reversed the administrative law judge's award and denied the benefits. The Commission ruled that the accident which caused decedent's injuries and death did not arise out of and in the course of her employment. Section 287.120.1 RSMo. 1978. The judgment of the Commission is affirmed.

At the time of the accident, respondent Husky Corporation employed the decedent, Michael Gildehaus. Husky owns and operates an industrial plant in Dailey Industrial Park in Pacific, Missouri. The plant is located on the south side of Industrial Drive, a dedicated public street. Industrial Drive is about one-half mile long and runs east-west. At its westernmost point, Industrial Drive dead ends into a field. Industrial Drive's eastern terminus is a "T" intersection with Denton Road, a through street which runs north-south.

There are no other through streets which intersect Industrial Drive; therefore, the only access to Husky or any other business in Dailey Industrial Park is from Denton Road to Industrial Drive, where all the businesses in the industrial park are located. About fifty feet before it intersects with Denton Road, Industrial Drive crosses the Frisco railroad tracks which run in a north-south direction parallel to and west of Denton. This crossing is marked by standard crossbuck warning signs without lights. It is the crossing where the accident occurred.

Husky owns and controls its plant and parking lot, both of which are more than 100 yards west of the Industrial Drive-Frisco railroad crossing.

Gildehaus' normal working hours were 8:00 a.m. to 4:30 p.m. On August 14, 1981, around 4:39 p.m., she left the plant parking lot in her automobile. Gildehaus drove east on Industrial Drive, intending to cross the Frisco tracks, turn north on Denton Road and continue driving toward her residence. While crossing the Frisco tracks, her automobile was struck by a northbound train. As a result of the injuries sustained in that accident, Mrs. Gildehaus died on August 29, 1981.

■ The sole issue on appeal is whether the accident which caused Mrs. Gildehaus' death arose "out of and in the course of" her employment. Where the facts are not in dispute, this question is a matter of law, and the Commission's decision is not binding on the reviewing court. *Kansas City, Missouri Police Dept. v. Bradshaw*, 606 S.W.2d 227, 231 [1] (Mo.App.1980); *Hunt v. Allis-Chalmers Manufacturing Co.*, 445 S.W.2d 400, 401 (Mo.App.1969).

Section 287.120.1 RSMo.1978 requires that an accident, to be compensable under the workers' compensation law, must arise out of and in the course of the worker's employment. The statute further provides in § 287.020.5 RSMo.Cum.Supp.1984:

Without otherwise affecting either the meaning or interpretation of the abridged clause, "personal injuries arising out of and in the course of such employment", it is hereby declared not to cover workers except while engaged in or about the premises where their duties are being performed, or where their services require their presence as a part of such service.

The decedent was not engaged in work on the premises where she normally performed her duties, nor did her services require her presence at the crossing where she was injured as a part of her service. She was there because she was on her way home.

Injuries sustained by an employee while going to or from work are not generally held to arise out of and in the course of his employment and thus are not compensable.

*Kammeyer v. Board of Education,* 393 S.W.2d 122, 130 [11–14] (Mo.App.1965).

■ The accident causing the claimants' decedent's injuries and death did not arise out of and in the course of her employment, but occurred while she was going home from work. The facts in this accident do not bring it within the exception to the general rule which applies when there is an extension of an employer's premises to include the place of an accident which happens away from the premises. *Hunt,* 445 S.W.2d at 409[6].

The place of the accident was a public road where it crossed the Frisco tracks. Husky had no control over or responsibility for the road or the crossing, which were the responsibility of the city and the railroad. The accident occurred approximately 350 feet away from the nearest corner of the Husky factory building. The hazards of the crossing were typical of those at any similar railroad crossing. The crossing was used by the general public.

At the crossing where the accident occurred, the Frisco railroad tracks were not adjacent or contiguous to the Husky premises. A spur track runs southwest from the main line and along the south edge of the Husky property. The Commission found no evidence that Husky did any business with the Frisco Railroad, and no evidence Husky exercised any control over the public grade crossing which was the site of the accident.

There were nine other industrial establishments in Dailey Industrial Park at the time of the accident. These establishments employed approximately five hundred people who used the Industrial Drive thoroughfare as their only means of going to their employment. In addition to the people who worked in the industrial park, the road was used by suppliers, sales persons, delivery trucks and the like. Industrial Drive was open to the public and any person who visited any one of the ten establishments would be required to use Industrial Drive if he came by motor vehicle.

If Husky should be found liable to an employee under the circumstances here, then every other business establishment in the Industrial Park could also be held liable under the workers' compensation law for any injury incurred by an employee while he was crossing the tracks on Industrial Drive, even if the premises of the business should be as far as half a mile from the crossing. If this court should rule in appellant's favor, the principle adopted would be applicable to industrial parks where there are twenty industries, or fifty, or perhaps more than one hundred, provided there was only one hazardous entrance to the park for all of the business establishments. No Missouri cases have gone so far.

An early case in which an employee attempted to collect workers' compensation for injuries he received when he was struck by a train while crossing the tracks was *Tucker v. Daniel Hamm Drayage Co.,* 171 S.W.2d 781 (Mo.App.1943). The Commission denied compensation. On appeal the then St. Louis Court of Appeals affirmed the denial.

The court held that the accident did not arise out of and in the course of appellant's employment and cited the general rule that harm sustained by an employee going to and from his work is not compensable. *Tucker,* 171 S.W.2d at 784[2]. The accident in *Tucker* occurred at a railroad track at the intersection of Main and Biddle Streets in St. Louis, which was 150 or 200 feet from the corner of the building where the employee was to perform his work. *Id.* at 785[3].

The facts in the case under review are similar although in *Tucker* there was another route which the claimant could have taken to his workplace, a route nonetheless hazardous because he had to cross the railroad tracks no matter what route he used. *Id.*

The cases which allow an award of workers' compensation for injuries sustained on the way to or from work are those in which the places where the injury occurred are in practical effect a part of an employer's premises. *Tucker,* 171 S.W.2d at 785[3]. To say that Husky's premises were extended 300 feet or more to a public road and

railroad grade crossing would expand the workers' compensation concept far beyond the legislative intent and the existing Missouri cases.

As the court said in *Tucker*, the legislature might adopt a statute providing for workers' compensation awards to employees who sustain accidental injuries while they are on their way to and from work, but it would be an act of judicial legislation for this court to extend an employer's premises, for the purpose of determining whether an accident arose out of and in the course of the employment of an injured party, to a public road railroad crossing which is approximately three hundred fifty feet away from the employer's plant, and even farther away from the employer's parking lot. 171 S.W.2d at 786[4].

█ The issue here may be narrowly defined. Is an employee subject only to the common risks shared by the general public and not to any risk causally related to the employment? *Pulliam v. McDonnell Douglas Corporation*, 558 S.W.2d 693, 698[5, 6] (Mo.App.1977). If so, the employee's injuries are not compensable. The risk of an accident on the Frisco grade crossing is not causally related to the employment of Husky's workers. It is a risk common to the general public. Members of the general public who visit the industrial establishments in Dailey Industrial Park are subject to the risks of the railroad crossing on Industrial Road, a public street. "Although Industrial Drive is not a through street, salesmen, service persons, suppliers, applicants for employment, and others, all use the street from time to time. All members of the general public are entitled to use the street and many members of the general public do.

There is no implied extension of Husky's premises to the grade crossing that is a special hazard to Husky's employees, not shared by the general public.

Appellant relies on *Hunt v. Allis-Chalmers Manufacturing Co., supra.* In *Hunt*, the facts support the court's finding that the employer actually extended his premises to cover the railroad crossing where the employee was injured. The rail-road crossing was immediately adjacent to the employer's premises. *Hunt*, 445 S.W.2d at 403. The employer arranged for the use of the parking lot by the employee which was across the railroad tracks from the employer's plant. *Id.* There was no use by the general public of either the railroad right of way or the path which took the employees across the tracks to their place of employment. *Id.* The path was sanctioned by the employer because it informally arranged for the parking on the lot and actually issued instructions for the use of the lot. *Id.*

The court held that Mr. Hunt had a recurrent, almost daily exposure to the danger of the tracks because of his obligation to get to his employer's premises to perform his work. 445 S.W.2d at 408[2, 3]. Due to this, Mr. Hunt's status was different from members of the public and "involve(d) peculiar and abnormal exposure to a common peril". *Id.* Hunt is not controlling.

Appellant cites other cases, one of which is *State ex rel McDonnell Douglas Corporation v. Luten*, 679 S.W.2d 278 (Mo. banc 1984). In *Luten*, however, the employee was run over by a careless driver while she was crossing a road when she left her work at McDonnell Douglas. 679 S.W.2d at 279. She crossed the road in a crosswalk marked area at which McDonnell Douglas had installed a sheltered bus stop. *Id.* McDonnell Douglas had actively extended its premises by constructing the bus stop across the road and painting the crosswalk on the road. 679 S.W.2d at 280[7]. Husky did not take any affirmative action to extend its premises to the grade crossing in question in the case under review.

Appellant further relies on two United States Supreme Court cases: *Cudahy Packing Co. of Nebraska v. Parramore*, 263 U.S. 418, 44 S.Ct. 153, 68 L.Ed. 366 (1923), and *Bountiful Brick Co. v. Giles*, 276 U.S. 154, 48 S.Ct. 221, 72 L.Ed. 507 (1928). These cases are also distinguishable. They were decided only on the basis of the constitutionality of the awards under the due process clause of the Fourteenth Amendment to the United States Constitution. *Parramore*, 263 U.S. at 422, 44 S.Ct.

at 153; *Giles,* 276 U.S. at 156, 48 S.Ct. at 221.

The Supreme Court found in these cases, both of which concern the workers' compensation act of the State of Utah, that the awards of compensation did not unconstitutionally deprive the employer of his property without due process of law. *Parramore,* 263 U.S. at 426, 44 S.Ct. at 155; *Giles,* 276 U.S. at 159, 48 S.Ct. at 222. The Utah Supreme Court, in both cases, had affirmed awards of compensation to the employee which the Court in *Parramore* said was controlling on the Supreme Court. 263 U.S. at 426, 44 S.Ct. at 155. The Utah court's decisions are not binding on this court. Further, there are factual differences between the case here and the Utah cases.

The judgment of the Commission is affirmed.

CARL R. GAERTNER, P.J., and SMITH, J., concur.