Barbara DAVIS, Claimant,

v.

McDONNELL DOUGLAS, Respondent.

No. 64024.

Missouri Court of Appeals,
Eastern District,
Division One.

Jan. 4, 1994.

James E. Lownsdale, Brandenburg, Kaveney & Lownsdale, Clayton, for claimant.

Dean L. Christianson, Evans & Dixon, St. Louis, for respondent.

CRANDALL, Presiding Judge.

Claimant, Barbara Davis, appeals from the decision of the Labor and Industrial Relations Commission (Commission) which denied her workers' compensation benefits on the basis that her injury did not arise out of and in the course of employment. We affirm.

On February 3, 1990, claimant was employed by McDonnell Douglas Corporation (employer). Around 3:30 p.m., after complet-

ing her shift, she was leaving work. She drove out of employer's parking lot through an exit gate in the fence around employer's perimeter, making a left hand turn into one of the south bound lanes of Highway 94 (highway). At that point, another vehicle struck the rear end of claimant's vehicle.

Usually, a security guard hired by employer directed traffic at the intersection of the highway and the gate. The security guard was not there at the time of the accident. He was late, arriving at the gate shortly after the accident occurred. Claimant testified that, at the time of the accident, there was no stop sign by the gate. The security guard disagreed, however, stating that there was a permanent stop sign in place at the time of the accident, as well as before and after the accident.

Employer's parking lot was fenced in, with nine exit gates. On the day of the accident, because it was a Saturday, only two of the gates were open, one of which was a twenty-four-hour gate. The accident did not occur at the gate which was open twenty-four hours. Employer's property ended at the fence line. The highway was a public road which was contiguous to the western edge of employer's property. Employer did not maintain the highway or alter the highway in any way to accommodate its employees. Sometimes, employer cut the grass along the side of the highway next to its property.

■ The sole issue on appeal is whether the accident "arose out of and in the course of" claimant's employment. Where the facts are not in dispute, this question is a matter of law, and the Commission's decision is not binding on the reviewing court. *Gildehaus v. Husky Corp.*, 718 S.W.2d 600, 601 (Mo.App. 1986). We, therefore, must determine whether the Commission correctly applied the law.

Section 287.120.1, RSMo (Cum.Supp.1992) requires that an accident, to be compensable under the Workers' Compensation Law, arise out of and in the course of the worker's employment. Section 287.020.5, RSMo (1986) further provides:

Without otherwise affecting either the meaning or interpretation of the abridged clause, **"personal injuries arising out of and in the course of such employment"**, it is hereby declared not to cover workers except while engaged in or about the premises where their duties are being performed, or where their services require their presence as a part of such service.

■ Generally, the "going and coming" rule insulates an employer from liability for injuries sustained by an employee going to and coming from work, because such injuries do not arise out of and in the course of employment. *Shinn v. General Binding Corp., Koelling Metals Div.*, 789 S.W.2d 230, 232 (Mo.App.1990). The rationale behind this principle is that the employee going to and from work is subject only to the common risks shared by the general public and not to any risk causally related to employment. *Pulliam v. McDonnell Douglas Corp.*, 558 S.W.2d 693, 698 (Mo.App.1977).

■ If the employee is injured, however, while passing with the express or implied consent of the employer to or from work, by a way over the employer's premises, the injury is one arising out of and in the course of employment, as if the accident had happened while the employee was engaged in his work at the place of employment. *State ex rel. McDonnell Douglas Corp. v. Luten*, 679 S.W.2d 278, 280 (Mo. banc 1984). For purposes of this rule, the employer's premises may extend by implication to property that is so appropriated by the employer or so situated, designated, and used by its employees incidental to their work that it becomes, for all practical purposes, a part of employer's premises and operation. *Id.* Property is sufficiently "appropriated" to become part of employer's extended premises, if the employee uses it as a route of access to the employer's premises and the employer knows about and acquiesces to such use by the employee. *Id.* (citing *Hunt v. Allis–Chalmers Mfg. Co.*, 445 S.W.2d 400, 409 (Mo.App.1969)).

Claimant relies on *Luten* to support her contention that the extension of premises doctrine should apply to permit her recovery. In *Luten*, the court held that an injury sustained by an employee who was leaving work was compensable under Workers' Compensation Law. *Luten*, 679 S.W.2d at 280. In

that case, an automobile operated by another employee struck the injured employee as she was crossing a road to a sheltered bus stop after exiting the employer's property through a gate. *Id.* In finding that the injuries arose out of and in the course of employment, the court focused on the fact that the employer had expressly approved the route on which the employee was travelling as a means of access to its facility. *Id.* To establish that the employer had actively extended its premises to include the road, the court looked at several factors: the bus stop was built and maintained by the employer; the crosswalk to the bus stop was marked by lines painted by the employer and illuminated by a light erected by the employer; although the roadway was a public thoroughfare, the surface of the road was maintained by the employer; and the bus which the shelter served was driven by another employee. *Id.* at 279. The court concluded that the crosswalk served as an overt encouragement for the employees' use as a means of egress from the employer's facility. *Id.* at 281.

Claimant also points to the decision in *Hunt,* 445 S.W.2d at 400 to support her position. In *Hunt,* the court found that the injury resulting in Hunt's death arose out of and in the course of his employment. *Id.* at 410. Hunt was struck by a train as he crossed railroad tracks which were necessary for him to cross to get from a parking lot to his place of employment. *Id.* at 405. The railroad crossing was immediately adjacent to the employer's premises, and the parking lot was across the railroad tracks from the employer's plant. *Id.* at 403. The general public did not use either the railroad right of way or the path by which the employees crossed the tracks to the plant. *Id.* The employer sanctioned the use of the path, because it informally arranged for employees to park on the lot and issued instructions for the employees' use of the lot. *Id.* The court held that Hunt had a recurrent, almost daily exposure to the danger of crossing the tracks because of his obligation to get to his employer's premises to perform his work. *Id.* at 408.

In contrast to the two cases discussed above, the court in *Pulliam* reversed a workers' compensation award, finding that the injury leading to Pulliam's death did not arise out of or in the course of his employment. *Pulliam,* 558 S.W.2d at 701. Pulliam was struck by a train while using a footpath which crossed two sets of railroad tracks. *Id.* at 695. The footpath served as a shortcut from a residential area to his place of employment. *Id.* The court found that there was no implied extension of the employer's property to include the footpath and the railroad tracks. *Id.* at 699. The court concluded that there was no evidence that the employer in any way invited its employees to use that path: "there were no control lights, pedestrian aids or cross walk lines" on the road leading from the footpath to employer's gate. *Id.*

■ The facts of the present case do not bring it within the extension of premises doctrine. The accident occurred on a public road, after claimant had already pulled out of employer's parking lot. Employer exercised no control over or responsibility for the highway. Employer did not make any alterations to the highway for the exclusive benefit of its employees. The intersection was used by the general public. The hazards of turning onto the highway at the point where the gate was located were typical of those at any other intersection. Employer did not take any affirmative action which would indicate there was an implied extension of its premises to include the highway. *See, e.g., Gildehaus,* 718 S.W.2d at 602.

Claimant argues that employer's placing a security guard and erecting a stop sign at the intersection of the highway and the gate were sufficient indicia of control to invoke the extension of premises doctrine. We disagree. Both the security guard and the stop sign represented measures by employer to make the intersection safer not only for employees exiting the gate, but also for the general public travelling on the highway. The stop sign merely served as a reminder to employees to stop before turning onto the highway. The security guard facilitated the flow of traffic at the intersection, particularly at the end of a shift at employer's facility.

Employer's placement of the security guard and the stop sign at the intersection did not constitute an overt invitation to its employees to use only the gate at that intersection to exit employer's property, and did not result in an extension of employer's premises to include the highway. Claimant's point is denied.

The decision of the Commission is affirmed.

REINHARD and CRIST, JJ., concur.